In re DISCIPLINARY
PROCEEDINGS.

William C. Sheridan,
Defendant/Appellant,

v.

Nancy H. Michels, Plaintiff/Appellee.

BAP Nos. NH 01–076, NH 02–005.
Adversary No. 00–1140–JMD.

United States Bankruptcy Appellate Panel
of the First Circuit.

Aug. 16, 2002.

William C. Sheridan, Londonderry, NH, pro se.

Nancy H. Michels, Carole A. Mansur, Londonderry, NH, on brief for appellee.

Before HAINES, ROSENTHAL, & KORNREICH, U.S. Bankruptcy Appellate Panel Judges.

## OPINION

PER CURIAM.

### INTRODUCTION

This matter comes before us on consolidated appeals from two orders of the United States Bankruptcy Court for the District of New Hampshire (the "Bankruptcy Court"). The first (the "Suspension Order") suspended the Appellant, William C. Sheridan ("Sheridan"), from practicing law before the Bankruptcy Court for a period of one (1) year. The second (the "Fee Order") awarded fees and costs incurred by special counsel, Nancy H. Michels ("Special Counsel"), in investigating and prosecuting the disciplinary action. The Bankruptcy Court entered the Suspension Order after trial, having found that Sheridan had committed at least eighty-eight (88) violations of New Hampshire Rules of Professional Conduct ("NHRPC") 1.1 and 1.15 while serving as counsel for various debtors in bankruptcy cases. Sheridan argues, among other things, that the Bankruptcy Court did not have jurisdiction to commence a disciplin-

ary investigation against him or to suspend him from practice. As to the Fee Order, Sheridan argues that Special Counsel's fees and expenses were unreasonable, that the Bankruptcy Court lacked authority to make the award, and that it could not properly condition his reinstatement on payment (or, more accurately, reimbursement) of the award.

For the reasons set forth below, we affirm.

### BACKGROUND

On June 21, 2000, the Bankruptcy Court, through Chief Judge Vaughn, appointed Special Counsel to investigate Sheridan's possible violation of NHRPC Rules 1.1 and 1.15. As a result of her investigation, on September 20, 2000, she submitted a report to Judge Vaughn recommending that a disciplinary proceeding be initiated. Judge Vaughn granted Special Counsel leave to institute the proceeding. On October 30, 2000, she filed an adversary proceeding complaint requesting that Sheridan be disciplined. Prior to trial, the parties entered into a stipulation in which Sheridan admitted many of the complaint's factual allegations.

### A. The Suspension Order.

On October 12, 2001, several months following trial, the Bankruptcy Court issued its order suspending Sheridan from practicing before the Bankruptcy Court for a period of one (1) year. The Bankruptcy Court found that during a twenty (20) month period between January 13, 1999 and September 29, 2000, Sheridan committed at least eighty-eight (88) violations of NHRPC. 1.1 and 1.15.[1] See Mi-

---

1. Rules 1.1 and 1.15 of NHRPC provide as follows:

 Rule 1.1. COMPETENCE

 (a) A lawyer shall provide competent representation to a client.

 (b) Legal competence requires at a minimum:

*chels v. Sheridan*, 2001 WL 1757058, *23, 2001 Bankr.LEXIS 1383, *69 (Bankr. D.N.H.2001). The violations included (i) failure to file certificates of service for Chapter 13 plans, (ii) failure to file answers to motions to dismiss or convert, (iii) failure to timely file documents, (iv) failure to properly review and advise a client regarding a reaffirmation agreement, (v) failure to pay proper attention to details, (vi) failure to segregate clients' property from his own, (vii) failure to keep proper records, and (viii) failure to notify the client and deliver to the client property that the client was entitled to receive. These violations involved thirty (30) clients in thirty-three (33) separate cases, plus at least five (5) additional infractions committed during the course of the disciplinary proceeding.[2] The Bankruptcy Court found that Sheridan had demonstrated a continuing unwillingness or inability to competently provide services to his clients and meet his profes-

sional obligations. *Id.* at *23. The Bankruptcy Court also noted Sheridan had admitted allegations which "at best show a repeated pattern of conduct involving inattention to and neglect in handling client matters." *Id.* at *23. Accordingly, the Bankruptcy Court determined it was necessary to impose sanctions.

In fixing the appropriate sanctions, the Bankruptcy Court concluded that, due to Sheridan's pattern of repeated violations of his obligation to handle client matters competently as required by NHRPC 1.1, he had demonstrated that he was not currently fit to practice law in the Bankruptcy Court, and that he was not immediately capable of improving his conduct. *Id.* Accordingly, in order to protect the public and the administration of justice, the Bankruptcy Court suspended Sheridan from practicing law before it for a period

(1) specific knowledge about the fields of law in which the lawyer practices;
(2) performance of the techniques of practice with skill;
(3) identification of areas beyond the lawyer's competence and bringing those areas to the client's attention;
(4) proper preparation; and
(5) attention to details and schedules necessary to assure that the matter undertaken is completed with no avoidable harm to the client's interest.
(c) In the performance of client service, a lawyer shall at a minimum:
(1) gather sufficient facts regarding the client's problem from the client, and from other relevant sources;
(2) formulate the material issues raised, determine applicable law and identify alternative legal responses;
(3) develop a strategy, in collaboration with the client, for solving the legal problems of the client; and
(4) undertake actions on the client's behalf in a timely and effective manner including, where appropriate, associating with another lawyer who possesses the skill and knowledge required to assure competent representation.

Rule 1.15. SAFEKEEPING PROPERTY.
(a)(1) Property of clients or third persons which a lawyer is holding in the lawyer's possession in connection with a representation shall be held separate from the lawyer's own property. Funds shall be deposited in one or more clearly designated trust accounts in accordance with the provisions of the New Hampshire Supreme Court Rules. All other property shall be identified as property of the client, promptly upon receipt, and safeguarded.

2. In her complaint, Special Counsel alleged that in thirty-four (34) separate bankruptcy cases, many with multiple violations, Sheridan failed to properly represent his clients. The Bankruptcy Court reviewed the record on a case by case basis and determined that in *thirty-three (33)* separate cases, Sheridan had committed at least eighty-eight (88) violations of NHRPC 1.1 and 1.15 in his dealings with his clients. The Bankruptcy Court also examined the record of the disciplinary proceeding and found that Sheridan had committed at least five infractions in the disciplinary proceeding alone.

of one (1) year.[3]

The Bankruptcy Court also ordered that prior to Sheridan's reinstatement, application for which could not be made any sooner than after six (6) months, Sheridan would be required to establish that (i) he is a member in good standing of the bar of the United States District Court for the District of New Hampshire (the "District Court"), (ii) he will be able to competently represent the interests of his clients before the Bankruptcy Court, and (iii) he has reimbursed the government for the cost of the proceedings by paying to the Clerk of the District Court the amount of fees and expenses awarded to Special Counsel. *Id.* at *24. The Bankruptcy Court authorized Special Counsel to submit an application seeking payment of fees and expenses earned and incurred in the course of her service.

Subsequently, Sheridan filed three separate motions for reconsideration, primarily arguing that the Bankruptcy Court did not have jurisdiction to hear the matter and that the Suspension Order violated the Rehabilitation Act and the Americans with Disabilities Act because the Bankruptcy Court premised its finding of professional misconduct on conduct arising out of Sheridan's alleged disability. The Bankruptcy Court denied each of the three motions.

### B. *Fee Order.*

Consistent with the Bankruptcy Court's directions, Special Counsel filed her Final Application For Approval Of Fees Pursuant To Court Order (the "Fee Application"), seeking $30,377.50 in fees and expenses for work performed by her and others in her firm in connection with the disciplinary proceeding. Appended was a detailed statement setting forth the services rendered and the hours spent on the case. On November 29, 2001, the day of the hearing on the Fee Application, Sheridan filed a late objection,[4] arguing, among other things, that the Bankruptcy Court lacked jurisdiction to enter a fee award and that Special Counsel's fees were unreasonable.

On December 27, 2001, the Bankruptcy Court entered the Fee Order. It rejected Sheridan's jurisdictional argument, noting that Sheridan was rehashing the same arguments as he had previously raised in opposition to the Suspension Order. It concluded that Special Counsel's fees were reasonable, awarding her fees and expenses totaling $30,377.50.[5]

On January 8, 2002, the Bankruptcy Court entered a supplemental order directing the Clerk to pay the approved fees to Special Counsel as follows: two payments in the amount of $10,125.83 each, payable on or before March 1, 2002 and

---

3. The Bankruptcy Court held as follows:

 In order to protect the public and the administration of justice, the Court finds that it must suspend Attorney Sheridan from the practice of law in this Court for such period of time as is necessary for him to effectuate such changes in his professional life as will enable him to competently perform services as an attorney practicing before this Court.... This period of suspension shall be for one year from the date of this opinion.

 *Id.* at *24.

4. The deadline for objecting to the Fee Application was November 9, 2001. Therefore, Sheridan's objection was not timely. The Bankruptcy Court did, however, consider the objection, permitting Sheridan to argue at the hearing and granting Special Counsel additional time to respond.

5. The Bankruptcy Court also rejected Sheridan's contentions that Special Counsel's actions were somehow improper because she was under the direction or control of the Assistant United States Trustee. At the November 29, 2001 hearing, Sheridan admitted that he could not substantiate those claims.

June 1, 2002 and a final payment in the amount of $10,125.84 payable on or before September 1, 2002.

Subsequently, Sheridan moved for reconsideration of the Fee Order, arguing that the Bankruptcy Court did not have the power to compensate Special Counsel out of court funds. The Bankruptcy Court denied the motion, concluding that Sheridan had presented no authority for the proposition that the Bankruptcy Court could not award such fees and order their payment, nor had he demonstrated that the Bankruptcy Court had made a manifest error of law in connection with the fee issues.

### ISSUES ON APPEAL

Sheridan asserts, among other things, that the Bankruptcy Court was without jurisdiction to commence a disciplinary investigation or to suspend him from practicing before it as a result of that investigation. In addition, he argues that the fees and expenses awarded to Special Counsel in connection with the disciplinary proceeding were unreasonable, that the Bankruptcy Court did not have authority to award Special Counsel her fees and expenses, and that the Bankruptcy Court could not properly condition Sheridan's reinstatement upon payment of the fees and expenses awarded to Special Counsel.

### APPELLATE JURISDICTION AND STANDARD OF REVIEW

■ The Bankruptcy Appellate Panel has appellate jurisdiction over final bankruptcy court orders pursuant to 28 U.S.C. § 158. The clearly erroneous standard applies to review of factual findings; *de novo* review to conclusions of law. *See, e.g., Prebor v. Collins (In re I Don't Trust),* 143 F.3d 1, 3 (1st Cir.1998); *Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.),* 132 F.3d 104, 107 (1st Cir.1997); *TI Fed. Credit Union v. Del-Bonis,* 72 F.3d 921, 928 (1st Cir.1995). Subject matter jurisdiction is a legal issue and, thus, is reviewed *de novo. See Sunshine Dev., Inc. v. FDIC,* 33 F.3d 106, 110 (1st Cir.1994) (question of lower court's jurisdiction presents pure question of law subject to *de novo* review); *Balzotti v. RAD Investments,* 273 B.R. 327 (D.N.H. 2002) (*de novo* review of bankruptcy court's jurisdictional rulings).

■ Orders imposing sanctions are reviewed for abuse of discretion. *Peugeot v. United States Trustee (In re Crayton),* 192 B.R. 970 (9th Cir. BAP 1996). Appellate courts accord substantial respect to the trial court's informed discretion on fee issues and will disturb such a fee award only for mistake of law or abuse of discretion. *Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331 (1st Cir.1997). An abuse of discretion occurs "when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *Foster v. Mydas Assocs., Inc.,* 943 F.2d 139, 143 (1st Cir.1991) (internal quotation marks and citation omitted).

### DISCUSSION

#### I. Jurisdiction.

##### A. Jurisdiction to Suspend Sheridan.

■ The Bankruptcy Court concluded that it had jurisdiction to suspend Sheridan for violations of the applicable rules of professional conduct based upon a federal court's inherent authority to discipline attorneys who appear before it, and pursuant to its Administrative Order 2090–2, adopted pursuant to the authority granted by the District Court to promulgate rules of practice and procedure. We agree that the Bankruptcy Court had jurisdiction to

suspend Sheridan from practicing before it.

### (1) Inherent Authority.

▇▇▇ A federal court has the inherent power to control admission to its bar and to discipline attorneys who appear before it. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (*citing Ex Parte Burr,* 22 U.S. (9 Wheat) 529, 6 L.Ed. 152 (1824)), *reh'g denied,* 501 U.S. 1269, 112 S.Ct. 12, 115 L.Ed.2d 1097 (1991). This inherent power is necessary for federal courts to manage their affairs and to achieve orderly and expeditious disposition of cases. *Id.* Pursuant to its inherent power to manage its affairs, a federal court is vested with the power to require that those who appear before it submit to and follow its rules and mandates. *Id.*

▇▇▇ A bankruptcy court is a unit of the district court, authorized to exercise authority with respect to bankruptcy matters. 28 U.S.C. § 151. As a federal court, a bankruptcy court has the inherent power to sanction, by suspension or disbarment, any attorney who appears before it. *See generally Peugeot,* 192 B.R. at 970; *see also Cunningham v. Ayers (In re Johnson),* 921 F.2d 585, 586 (5th Cir.1991) (recognizing that bankruptcy judges may discipline lawyers in the context of both contempt and disciplinary proceedings).

> The bankruptcy court has the inherent and statutory power and authority to suspend or remove any attorney from the roll of attorneys allowed to practice before it. Disbarment proceedings are not for the purpose of punishment, but rather to seek to determine the fitness of an official of the court to·continue in that capacity and to protect the courts and the public from the official ministration of persons unfit to practice.

*In re Derryberry,* 72 B.R. 874, 881 (Bankr. N.D.Ohio 1987) (internal quotation marks and citations omitted). Moreover, a bankruptcy court not only has the authority to discipline an attorney for misconduct, but it also has the *responsibility* to take action in order to protect the integrity of the court, its bar and the public from such misconduct. *Id.* (emphasis added).

### (2) Section 105(a).

▇▇▇ In addition, § 105(a) of the Bankruptcy Code provides that a bankruptcy court may issue any order, process or judgment that is "necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) empowers a bankruptcy court to sanction and otherwise discipline attorneys who appear before it, given that incompetent attorneys frustrate the Bankruptcy Code's purpose of prompt administration of the estate and equitable distribution of assets. *Peugeot,* 192 B.R. at 976. Many courts have used § 105(a) as a basis for holding that bankruptcy courts have both statutory and inherent authority to deny attorneys and others the privilege of practicing before that bar. *See, e.g., Johnson,* 921 F.2d at 586; *In re MPM Enters., Inc.,* 231 B.R. 500, 504 (E.D.N.Y.1999); *In re Gunn,* 171 B.R. 517, 518 (Bankr.E.D.Pa.1994); *see also Wright v. United States (In re Placid Oil Co.),* 158 B.R. 404, 411 (N.D.Tex.1993); *In re Kelton Motors, Inc.,* 109 B.R. 641, 649 (Bankr.D.Vt.1989).

The United States Court of Appeals for the First Circuit has recognized a bankruptcy court's power to regulate disruptive conduct through § 105(a). In *United States v. Mourad,* 289 F.3d 174 (1st Cir. 2002), the court of appeals affirmed the defendant's criminal contempt conviction. That conviction rested on a district court's determination that Mourad, a dissatisfied party in a bankruptcy case, had willfully violated a bankruptcy court order banning

him from the courtroom floor of the O'Neill Federal Building in Boston. He challenged his conviction on the ground that the bankruptcy court's order was "transparently invalid," thus enabling him to challenge the order's validity as a defense in a criminal contempt proceeding. *Id.* at 177–78. Rejecting the defense, the court of appeals commented:

> The Bankruptcy Code grants the bankruptcy court broad authority to:
>
>> *issue any order,* process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title ... shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or *to prevent an abuse of process.*
>
> 11 U.S.C. § 105(a). The purpose of the bankruptcy court's order excluding the appellant from the eleventh floor of the O'Neill building was to prevent the disruption of judicial proceedings that was threatened by Mourad's behavior. Given that more drastic orders have been upheld under the bankruptcy court's § 105 powers to protect the orderly administration of justice, Chief Judge Kenner's order seems to fall well within the bankruptcy court's general authority, particularly since the appellant was still able to make filings and inquiries with the court by mail or telephone....

*Id.* at 178 (emphasis added).

The court of appeals observed that bankruptcy courts must have the ability to enter such orders as are necessary to assure that they can carry out "efficiently and effectively the duties assigned to them

by Congress" and to "maintain control of their courtrooms and of their dockets." *Id.* at 179 (*quoting In re Volpert,* 110 F.3d 494, 500 (7th Cir.1997)).

Although Sheridan challenges the Bankruptcy Court's Suspension Order on direct appeal here, distinguishing this case from *Mourad's* "transparent invalidity" analysis, we conclude that *Mourad,* coupled with the persuasive authorities cited above, firmly establishes that the bankruptcy court had the power to suspend him from practice for a definite period. Whether seen as an exercise of inherent power, or of the statutory power provided by § 105(a), effectively regulating the conduct of bankruptcy attorneys, and imposing appropriate sanctions where required, goes to the heart of the bankruptcy court's business. It is an elementary component of the bankruptcy court's power to effectively and efficiently discharge its statutory function, to maintain control of its courtroom, and, in the course, to protect the public.

### (3) Administrative Order 2090–2.

Pursuant to Rule 77.4 of the Local Rules for the United States District Court for the District of New Hampshire (the "District Court Local Rules"), the District Court has delegated to the Bankruptcy Court the authority to make such rules of practice and procedure as it deems necessary, including the promulgation of rules governing the admission and eligibility of attorneys to practice in the Bankruptcy Court.[6] Pursuant to the authority granted by the District Court, the Bankruptcy Court has adopted Administrative Order 2090–2 (the "Administrative Order" or

---

6. The allocation of responsibility between district courts and bankruptcy courts for regulating attorney conduct is a matter of local concern and varies from district to district.

*Compare* N.H. District Court Local Rule 77.4 *with* Massachusetts District Court Local Rule 205 and Massachusetts Local Bankruptcy Rule 2090–2.

"AO 2090–2"),[7] entitled "Disciplinary Rules and Procedures." Disciplinary Rule 5 of the Administrative Order provides that acts or omissions by a lawyer which violate the Standards for Professional Conduct adopted by the Bankruptcy Court[8] shall constitute misconduct and be a grounds for discipline, and that any attorney who has been found to have engaged in such misconduct may be disbarred, suspended from practice before the Bankruptcy Court, or subject to such other disciplinary action as the circumstances warrant. AO 2090–2, DR–5(a) and (b). Furthermore, Disciplinary Rule 6 of the Administrative Order sets forth the procedure to be followed by the Bankruptcy Court when allegations of misconduct warranting attorney discipline comes to its attention. AO 2090–2, DR–6.[9]

The Administrative Order provided the Bankruptcy Court a procedural mechanism by which to regulate attorney conduct and to discipline attorneys. The Bankruptcy Court complied with the procedures set forth in the Administrative Order, operated within the parameters of the District Court's delegations to it, and followed a fair procedural model in exercising its powers.[10]

### (4) Inherent Power, § 105(a), and Subject Matter Jurisdiction.

The gravamen of Sheridan's argument regarding subject matter jurisdiction evidences his fundamental misapprehension of the nature of a bankruptcy court's inherent and statutory power as they relate to matters within its statutory charge. Noting that the disciplinary proceeding against him was initiated as a "stand alone" action, he argues that it did not "arise under title 11," "arise in a case under title 11," or "relate to" a pending bankruptcy case. *See In re Parque Forestal, Inc.*, 949 F.2d 504, 509–11 (1st Cir. 1991) (discussing bankruptcy court jurisdiction) (*citing Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)), *reh'g denied*, *In re Parque Forestal, Inc., Appeal of Oriental Fed. Sav. Bank*, 949 F.2d 504 (1st Cir.1992). As a consequence, he contends that the action was without the court's limited statutory jurisdiction. *See* 28

---

**7.** Local Bankruptcy Rule 9029–2 authorizes the Bankruptcy Court to adopt administrative orders for the conduct and disposition of proceedings before it. Administrative Order 2090–2 is included as Appendix A to this opinion.

**8.** The Standards for Professional Conduct adopted by the Bankruptcy Court are the Rules of Professional Conduct as adopted by the New Hampshire Supreme Court. *See* AO 2090–2, DR–1. The New Hampshire Supreme Court has adopted the NHRPC.

**9.** Disciplinary Rule 6 provides, in relevant part:

When misconduct or allegations of misconduct which, if substantiated, would warrant discipline of an attorney admitted or permitted to practice before this court shall come to the attention of this court, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these rules, the judge may follow ... the following procedure[ ]:....

appoint one or more members of the bar of this court to act as special counsel to investigate the matter, to prosecute the matter in formal disciplinary proceeding under these rules, to make such other recommendation as may be appropriate, or to perform any other functions required by the court in its order of appointment.

AO 2090–2, DR–6.

**10.** Sheridan complains that AO 2090–2 was not adopted by the Bankruptcy Court until October 6, 2000, several months after Special Counsel's appointment (but several months before she filed her complaint). The criticism is beside the point. At oral argument, Sheridan conceded that the substantive rules of conduct governing his performance as an attorney were in place during the period of his misconduct and he can point to no unfairness in the process the Bankruptcy Court employed.

U.S.C. § 157(a), (b) and (c); *see also In re Parque Forestal, Inc.,* 949 F.2d at 509–11.

In the opacity of his vision, Sheridan fails to see that a bankruptcy court's inherent power and its § 105(a) powers are fundamental complements to their statutory charge. Without them the bankruptcy judge would be as a sailor without canvas, a fisherman with neither net nor pole. Invocation of these powers is appropriate when their exercise is within the framework of a district court's delegation and necessary to execute the bankruptcy court's statutory charge. As such, it is unquestionably within the bankruptcy court's subject matter jurisdiction.

### (5) Summing Up.

We conclude that the Bankruptcy Court possessed inherent and statutory authority to conduct disciplinary proceedings to determine whether Sheridan's conduct measured up to applicable standards. We further conclude that the Bankruptcy Court followed fair procedures in making that determination and that, having reached its conclusion, it had the power to enter the Suspension Order.

### B. Jurisdiction to Order Payment of Special Counsel's Fees and Expenses.

 Sheridan argues that the Bankruptcy Court did not have the authority to award the payment of Special Counsel's fees and expenses from court coffers. In addition, he argues that it was without power to condition his reinstatement on, *inter alia,* his reimbursement of those fees and expenses.

As to the first point, Sheridan lacks standing. He can point to no way that the Bankruptcy Court's order for Special Counsel fees to be paid by the Clerk of the District Court aggrieves him personally. *See Spenlinhauer v. O'Donnell,* 261 F.3d 113, 117–18 (1st Cir.2001) (explaining standing requirement); *Kowal v. Malkemus (In re Thompson),* 965 F.2d 1136, 1142 n. 9 (1st Cir.1992) (generally, appellant has standing only where challenged order directly and adversely affects appellant's pecuniary interest); *see also* 15 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 24.03[2][d], ¶ 101.50 (3d ed. 1998) ("The 'prudential principles' of standing require that a plaintiff establish that he or she is the proper proponent of the asserted right, that the right asserted belongs to the claimant rather than a third party, and that the grievances asserted are not conjectural or generalized").

As to the second point, we have already concluded that a bankruptcy court has the power to sanction professional misconduct by attorneys who appear before it. That power extends to the imposition of monetary sanctions, including payment of attorneys' fees. *See Peugeot, supra,* 192 B.R. at 981 (affirming order disbarring attorney from practicing before it and ordering attorney to disgorge all fees paid by debtor); *see also Chambers, supra,* 501 U.S. 32, 111 S.Ct. 2123 (affirming attorneys' fees and expenses as sanction for bad faith conduct).

The Bankruptcy Court had authority to award fees to Special Counsel and to order Sheridan to reimburse the Clerk of the District Court for the amount of any fees and expenses awarded to Special Counsel in connection with the disciplinary proceeding prior to his reinstatement.[11]

---

11. The required reimbursement was but one of several conditions imposed on Sheridan's reinstatement. It remains to be seen whether, should he satisfy all others but be unable to make the payment, the reimbursement requirement alone would bar his reinstatement.

### C. Bad Faith.

██ Sheridan argues that even if bankruptcy courts can discipline attorneys, they may not do so absent a finding of bad faith conduct. This argument must fail. In *Peugeot, supra,* the Bankruptcy Appellate Panel for the Ninth Circuit held that, in certain circumstances, a bankruptcy court can discipline attorneys practicing before it without a showing of "bad faith." 192 B.R. at 977. The *Peugeot* panel distinguished between those cases in which the bankruptcy court used its powers to vindicate its judicial authority, and those cases in which the bankruptcy court was concerned with injury to the public and an attorney's ethical duties to his client. *Id.* Where the bankruptcy court is exercising its power to protect the public from unqualified practitioners, a "bad faith" showing is not necessary. *Id.* Other appellate courts have confirmed the power of a bankruptcy court to sanction attorneys not only for bad faith, but also for willfulness or fault by the offending party, or for recklessness. *Id.* (citations omitted).

In the present case, the Bankruptcy Court specifically stated that it was suspending Sheridan "[i]n order to protect the public and the administration of justice." *Michels v. Sheridan,* 2001 WL 1757058, *24, 2001 Bankr.LEXIS 1383, *71 (Bankr. D.N.H.2001). Moreover, it seems plain from a record of eighty-eight (88) infractions that recklessness, or at least some measure of fault, was patent. It was not an abuse of discretion for the Bankruptcy Court to suspend Sheridan from practicing before it for a defined, limited period.

### II. Type and Severity of Sanctions.

██ Sheridan argues that even if sanctions were warranted, the Bankruptcy Court "should rely upon the other sanctions at its disposal" before suspending him from practice. He asserts that, "since the Bankruptcy Court had other options, it was its duty to first articulate why those other options were not 'up to task.'" He has, however, failed to cite any case law, rule or other authority to support his contention that the Bankruptcy Court must rely upon sanctions other than suspension in a case such as his.

██ Bankruptcy courts have considerable discretion when determining the type and severity of sanctions. *See Whitney Bros. Co. v. Sprafkin,* 60 F.3d 8, 12 (1st Cir.1995); *Kale v. Combined Ins. Co. of America,* 861 F.2d 746, 758 (1st Cir. 1988). The imposition of sanctions is generally reviewed only for abuse of discretion. *See Chambers, supra,* 501 U.S. at 55, 111 S.Ct. 2123. In this context, a sanctioning court necessarily abuses its discretion when it "base[s] its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). However, absent such mistakes, the choice and severity of the sanction imposed is a matter reserved to the sanctioning court's discretion. It is far better situated to evaluate the evidence presented and to apply the appropriate legal standards. *See Whitney Bros., supra,* 60 F.3d at 12; *Kale, supra,* 861 F.2d at 758. Thus, the reviewing court's inquiry is not whether it would have employed the same measures, but whether the bankruptcy court's actions can be legally justified in light of the circumstances presented. *Id.*[12] Unless the

---

**12.** Even if there were a specific rule on point, use of inherent powers instead of statutory authority does not require reversal. *See Chambers,* 501 U.S. at 51, 111 S.Ct. 2123 (noting if, in the court's view, a statute or rule does not sufficiently address the conduct, a court may rely on its inherent power); *In re Rimsat, Ltd.,* 212 F.3d 1039, 1046 (7th Cir.

sanctioning court has acted unreasonably or contrary to law, sanctions will be affirmed. *In re Rimsat, Ltd., supra,* 212 F.3d at 1046. By no stretch did the Bankruptcy Court act unreasonably in imposing the sanctions it did here.

## III. Standard and Burden of Proof.

■ Sheridan was not permanently disbarred by the court below. He was only suspended for a term—a less Draconian sanction. It has been held, however, that a bankruptcy court has inherent power to disbar an attorney, providing its ruling is supported by clear and convincing evidence. *See Wright v. United States (In re Placid Oil Co.),* 158 B.R. 404, 413 (N.D.Tex.1993).[13]

Neither party before us takes issue with the "clear and convincing" standard. Therefore, we may assume, without deciding, that it is the proper burden of proof in matters of this ilk. Sheridan asserts that the Bankruptcy Court failed properly to apply the burden of proof, arguing that it drew "inferences against [him] without requisite admissible evidence." We disagree.

The District Court delegated to the Bankruptcy Court the authority to adopt rules of practice, including the rules governing attorney admission and eligibility to practice before it. *See* District Court Local Rule 77.4. To be eligible to practice in the Bankruptcy Court, attorneys must be admitted to the District Court bar. *Id.*

And members of the District Court bar must adhere to the New Hampshire Rules of Professional Conduct. *See* District Court Local Rule 83.5. The record contains clear and convincing evidence supporting the Bankruptcy Court's finding that Sheridan committed at least eighty-eight (88) violations of the New Hampshire Rules of Professional Conduct. How he can argue otherwise is mystifying, given that he stipulated to or admitted a multitude of the facts underlying the Bankruptcy Court's findings. Without more, those stipulations and admissions would provide sufficient record evidence to support findings of multiple instances of professional misconduct.

## IV. "Difficult Clients" Defense.

■ At trial, Sheridan argued in defense that his clients were difficult to contact, were uncooperative or simply disappeared during the pendency of their cases. He complained that his defalcations could not, therefore, be held against him. He also argued attorney client privilege had prevented him from disclosing that he could not reach his clients or that they had disappeared. Other than his own representations, Sheridan presented no evidence to support this defense.

■ Moreover, as the Bankruptcy Court observed, his claim that disclosing his inability to contact his clients would breach client confidentiality has no merit.

2000) ("[A] sanctioning court is not required to apply available statutes and procedural rules in a piecemeal fashion where only a broader source of authority is adequate").

13. Clear and convincing evidence, in this context, is:

[T]hat weight of proof "which produces in the minds of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts" of the case. [The appellate] court may not disturb the bankruptcy court's findings unless they are clearly erroneous. It makes this determination in the context of the clear and convincing evidence standard.

*Placid Oil, supra,* 158 B.R. at 413 (citations omitted).

An attorney's duty of confidentiality does not attach to non-communication with a client. *See Michels v. Sheridan,* 2001 WL 1757058, *22, 2001 Bankr.LEXIS 1383, *64–65 (Bankr.D.N.H.2001).[14] Sheridan has presented to us no case law or other authority to convince this Panel otherwise. The Bankruptcy Court's finding that Sheridan's own actions and inactions, rather than his inability to reach his clients, were the predominant cause of his defalcations, is supported clearly and convincingly in the record. The Bankruptcy Court properly rejected Sheridan's "difficult clients" defense.

## V. The Rehabilitation Act and/or the Americans with Disabilities Act.

■ Sheridan represents that he is disabled due to a "dopamine deficiency." Thus, he contends that the Suspension Order violates the Rehabilitation Act and/or the Americans with Disabilities Act. Although Sheridan did not identify the specific statutes, we assume he is referring to 29 U.S.C. § 794 (the "Rehabilitation Act") and 42 U.S.C.S. §§ 12131, *et seq.* (the "Americans with Disabilities Act" or "ADA").

Sheridan did not raise these issues before the Bankruptcy Court, except to make a passing reference to his alleged disability. Moreover, he produced no documentary or testimonial evidence to support his claim of disability or its effects. The first time Sheridan meaningfully raised the issue was in one of his motions for reconsideration of the Suspension Order.

■ Since Sheridan did not raise the issue until his motion for reconsideration, he has waived it. *See FDIC v. Shearson–American Express, Inc.,* 996 F.2d 493, 503 n. 13 (1st Cir.1993) (concluding that issue of sanctions would not be considered on appeal since creditor waited until motion for reconsideration to raise issue), *cert. denied,* 510 U.S. 1111, 114 S.Ct. 1054, 127 L.Ed.2d 375 (1994); *see also In re Rimsat, Ltd.,* 212 F.3d 1039, 1048 (7th Cir.2000) (arguments raised for the first time in a motion to reconsider are not preserved for appeal); *Patriot Portfolio, LLC v. Weinstein (In re Weinstein),* 164 F.3d 677 (1st Cir.), *cert. denied,* 527 U.S. 1036, 119 S.Ct. 2394, 144 L.Ed.2d 794 (1999) (appellant did not a preserve issue for appeal by raising it for the first time in motion for reconsideration). We need not consider these contentions now.[15]

14. NHRPC 1.6 provides, in pertinent part, as follows:

1.6. CONFIDENTIALITY OF INFORMATION
(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b)....

15. Even if we were to consider them, Sheridan's argument that the Bankruptcy Court violated his rights under the Rehabilitation Act and/or the ADA would fail. Neither § 504 of the Rehabilitation Act nor the ADA is applicable to a federal court such as the Bankruptcy Court. *See Melton v. Freeland,* 1997 WL 382054, 1997 U.S.Dist. LEXIS 3801

(M.D.N.C.1997); *Turgeon v. Brock,* 1994 WL 803506, 1994 U.S.Dist. LEXIS 18427 (D.N.H. 1994). Federal courts are not subject to Title II of the ADA since "public entities" to which the statute applies are defined only as state and local governments, and any department, agency, special purpose district or other instrumentality of a state or local government. Although judicial branches of state and local governments are encompassed by this definition, federal courts do not fall within the definition. *Turgeon,* 1994 WL 803506, 1994 U.S.Dist. LEXIS 18427; *Melton,* 1997 WL 382054, 1997 U.S.Dist. LEXIS 3801. Federal courts are not subject to the Rehabilitation Act since federal courts are not encompassed in the definition of "program or activity" to which the statute applies. *Melton,* 1997 WL 382054, 1997 U.S.Dist. LEXIS 3801.

## VI. Special Counsel's Fees and Expenses.

■ Sheridan argues that the Bankruptcy Court's award of fees to Special Counsel was an abuse of discretion because the Bankruptcy Court failed to apply the lodestar analysis and because the fees requested were not reasonable because the work performed was outside any "case and controversy" before the Bankruptcy Court. The latter point is but a restatement of the arguments we have considered and rejected above. We will not revisit them here.

Awards of compensation for professional services in bankruptcy proceedings are guided by § 330(a) of the Bankruptcy Code, which authorizes compensation for "actual, necessary services rendered by the ... attorney." 11 U.S.C. § 330(a). Courts in the First Circuit embrace the lodestar approach to fee computations both within and without the bankruptcy context. *Boston & Maine Corp. v. Moore (In re Boston & Maine Corp.)*, 776 F.2d 2, 6 (1st Cir.1985). *See In re Spillane*, 884 F.2d 642 (1st Cir.1989); *Furtado v. Bishop*, 635 F.2d 915 (1st Cir.1980); *In re Casco Bay Lines, Inc.*, 25 B.R. 747 (1st Cir. BAP 1982); *In re Thomas, Inc.*, 43 B.R. 510 (Bankr.D.Mass.1984); *In re Malden Mills, Inc.*, 42 B.R. 476 (Bankr.D.Mass.1984).

■ Under the lodestar analysis, the court first establishes a threshold point of reference or the "lodestar," which is the number of hours reasonably spent by each attorney multiplied by his reasonable hourly rate. *Boston & Maine Corp.*, 776 F.2d at 6. This lodestar can then be adjusted up or down based on consideration of some or all of the following twelve factors: (1) time and labor required; (2) the novelty and difficulty of the questions presented by the case; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) time pressures imposed by the client or the circumstances, (8) the amount involved and results obtained as a result of the attorneys' services; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; (12) awards in similar cases. *In re Public Serv. Co. of New Hampshire*, 160 B.R. 404, 413 (Bankr.D.N.H.1993) (*citing Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). "While calculation of the lodestar is a useful, and often mandatory, starting point when the customary agreed-upon fee is based on an hourly charge, it is not the sole benchmark for measuring the reasonableness of any and all attorney fees, regardless of the 'mode and measure.'" *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green, P.A.*, 778 F.2d 890, 894–95 (1st Cir.1985).

■ The cornerstones in the lodestar analysis are the reasonableness of the hours spent and the hourly rate sought. *See In re Spillane*, 884 F.2d at 647 (*citing In re Casco Bay Lines, Inc.*, 25 B.R. 747, 758 (1st Cir. BAP 1982)). In determining how many hours were reasonable, the court must review the work to see "whether counsel substantially exceeded the

---

In addition, even if the Rehabilitation Act and/or the ADA applied to the Bankruptcy Court, Sheridan's statements about his alleged disability are completely unsupported. He has produced no evidence to support his claim of disability or its effects. Recovery under both the Rehabilitation Act and the ADA require a plaintiff to establish he is disabled. *See Weiler v. Household Fin. Corp.*, 101 F.3d 519, 525 (7th Cir.1996) (Americans with Disabilities Act); *Zingher v. Vermont Div. Of Vocational Rehab.*, 30 F.Supp.2d 446, 453 (D.Vt.1997), *aff'd*, 165 F.3d 1015 (2d Cir. 1999) (Rehabilitation Act).

bounds of reasonable effort," and disallow hours that were "duplicative, unproductive, excessive, or otherwise unnecessary." *Id.* (citations omitted). The court is also expected to consider factors such as the type of work performed, who performed it, and the expertise required. *Id.*

Sheridan argues that the Bankruptcy Court failed to employ the lodestar approach and that Special Counsel's fees were not reasonable under the lodestar approach. He characterizes the Fee Order as "virtually devoid of any analysis of the [twelve lodestar] factors whatsoever." Since the Bankruptcy Court did not provide a detailed analysis of each of the lodestar factors, Sheridan contends that its decision to award fees to Special Counsel constituted an abuse of discretion.

As set forth above, this Panel must review the Fee Order for abuse of discretion. *See Coutin,* 124 F.3d 331.

> The test for determining whether a bankruptcy court's findings and conclusions are sufficiently detailed to pass muster is whether they permit the reviewing court to ascertain whether the bankruptcy court's order rests on a clearly erroneous perception of the facts or on a misapprehension of the law.... In the context of decisions regarding attorneys' fees, it is sufficient if the order is "specific enough to allow meaningful review ..." The order need not exhaustively discuss all of the factors customarily considered in making such an award. Nor is the court required to provide a detailed accounting of the calculations on which the award is based. All that is required is a clear indication that the court adequately considered and reasonably applied those factors that are relevant to the case under consideration.

*In re Pontarelli,* 250 B.R. 160, 161 (Bankr. D.R.I.2000) (citation omitted).

Although the Fee Order does not contain a detailed discussion of the specific lodestar factors, the Bankruptcy Court did review a detailed billing invoice setting forth the services rendered and the corresponding time spent on the case was attached to Special Counsel's Fee Application. It did not discuss each time entry contained in the statement, nor did it explicitly discuss each of the lodestar factors, but it did analyze the reasonableness of the fees by examining the categories of work performed and the reasonableness of the time expended on them. For example, the Bankruptcy Court found that the forty hours of "post-Complaint" investigation, where Special Counsel attended hearings and reviewed pleadings filed by Sheridan after disciplinary proceedings had commenced were both necessary and reasonable. Because one of Sheridan's defenses was that his past problems had been rectified, it was necessary and reasonable for Special Counsel to observe and determine whether Sheridan's past problems had, in fact, been resolved.

The court also found that the time Special Counsel spent conducting factual research was both reasonable and necessary, despite the fact that Sheridan eventually stipulated to substantially all of her factual allegations. Special Counsel had a duty to conduct a thorough investigation to determination what allegations, if any, could properly be made in her complaint. It was not unreasonable for her to review over a years' worth of cases to develop a clear understanding of Sheridan's professional conduct.

Sheridan argues, however, that the Bankruptcy Court should have adjusted the fee downward from approximately $30,000 to between $2,500 and $5,000, because the case was not difficult, the skill required to perform the services was not great, the awards in similar cases are low-

er and the understandability of the case was simple. In support of his argument, Sheridan identifies 42.6 hours of time which he claims were spent on unnecessary work. Even if this Panel were to agree that the 42.6 hours of work identified by Sheridan were unnecessary or unreasonable, that would only require a $6,816 reduction in fees (42.6 hours × $160/hour), from $30,000 to $23,184, rather than a $25,000 reduction to $5,000 as suggested by Sheridan. Moreover, as Special Counsel points out, Sheridan's professional career was at stake in this case and Special Counsel had a duty to conduct a thorough and comprehensive investigation into Sheridan's professional conduct. On the record before us, we cannot conclude that the Bankruptcy Court abused its discretion in entering the Fee Order.

## CONCLUSION

For the reasons set forth above, the Bankruptcy Court's Suspension Order and Fee Order are hereby AFFIRMED in their entirety.

## APPENDIX A

### AO 2090-2

#### Disciplinary Rules and Procedures

(Adopted pursuant to Order dated February 2, 2001)

The following disciplinary rules and procedures shall apply in all matters before this court.

### 1. Conferred Disciplinary Jurisdiction.

Any attorney admitted or permitted to practice before this court shall be deemed to have conferred disciplinary jurisdiction upon this court for any alleged attorney misconduct arising during the course of a case pending before this court in which that attorney has participated in any way.

### 2. Promulgation of Disciplinary Rules.

The court, in furtherance of its inherent authority and responsibility to supervise the conduct of attorneys who are admitted or permitted to practice before it, promulgates the Disciplinary Rules as outlined below.

### 3. Disciplinary Rules.

**DR-1 Standards for Professional Conduct.**

The Standards for Professional Conduct adopted by this court are the Rules of Professional Conduct as adopted by the New Hampshire Supreme Court, as the same may from time to time be amended by that court, and any standards of conduct set forth in these rules. Attorneys who are admitted or permitted to practice before this court shall comply with the Standards for Professional Conduct, and the court expects attorneys to be thoroughly familiar with such standards before appearing in any matter.

**DR-2 Attorneys Convicted of Crimes.**

(a) Upon the filing with this court of a certified copy of a judgment of conviction demonstrating that any attorney admitted to practice before the court has been convicted in any court of the United States, or the District of Columbia, or of any state, territory, commonwealth or possession of the United States of a serious crime as hereinafter defined, the court shall enter an order immediately suspending that attorney, whether the conviction resulted from a plea of guilty or nolo contendere, or from a verdict after trial or otherwise, and regardless of the pendency of any appeal, until final disposition of a disciplinary proceeding to be commenced upon such conviction. A copy of such order shall immediately be served upon the attorney as

provided in DR–9 of these rules. Upon good cause shown, the court may set aside such order when it appears in the interest of justice to do so.

(b) The term "serious crime" shall include any felony and any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime in the jurisdiction where the judgment was entered, involves false swearing, misrepresentation, fraud, willful failure to file or filing false income tax returns, deceit, bribery, extortion, misappropriation, theft or an attempt to or a conspiracy or solicitation of another to commit a "serious crime."

(c) A certified copy of a judgment of conviction of an attorney for any crime shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against that attorney based upon the conviction.

(d) Upon the filing of a certified copy of a judgment of conviction of an attorney for a serious crime, the court shall, in addition to suspending that attorney in accordance with the provisions of this rule, refer the matter to special counsel (i) for the institution of a disciplinary proceeding before one or more judges of the court in which the sole issue to be determined shall be the extent of the final discipline to be imposed as a result of the conduct resulting in the conviction, provided that a disciplinary proceeding so instituted will not be brought to final hearing until all appeals from the conviction are concluded; or (ii) a recommendation as to whether the imposition of final discipline should be stayed pending the outcome of a disciplinary proceeding in another court and pending the issuance of an order to show cause pursuant to DR–3(b)(2).

(e) Upon the filing of a certified copy of a judgment of conviction of an attorney for a crime not constituting a "serious crime," the court may refer the matter to special counsel for whatever action counsel may deem warranted, including the institution of a disciplinary proceeding before the court provided, however, that the court may in its discretion make no reference with respect to convictions for minor offenses.

(f) An attorney suspended under the provisions of this rule will be reinstated immediately upon the filing of a certificate demonstrating that the underlying conviction of a serious crime has been reversed but the reinstatement will not terminate any disciplinary proceeding then pending against the attorney, the disposition of which shall be determined by the court on the basis of all available evidence pertaining to both guilt and the extent of discipline to be imposed.

(§ (d) amended 2/2/01)

## DR–3 Discipline Imposed By Other Courts.

(a) Any attorney admitted to practice before this court shall, upon being subjected to public discipline by any other court of the United States or the District of Columbia, or by a court of any state, territory, commonwealth or possession of the United States, promptly inform the clerk of this court of such action.

(b) Upon the filing of a certified or exemplified copy of a judgment or order demonstrating that any attorney admitted to practice before this court has been disciplined by another court, this court shall forthwith issue a notice directed to the attorney containing:

(1) a copy of the judgment or order from the other court; and

(2) an order to show cause directing that the attorney inform this court within thirty (30) days after service of that order upon the attorney, personally or by mail, of any claim by the attorney predicated upon the grounds set forth in paragraph (d) hereof that the imposition of the identical discipline by the court would be unwarranted and the reasons therefor.

(c) In the event the discipline imposed in the other jurisdiction has been stayed there, any reciprocal discipline imposed in this court shall be deferred until such stay expires.

(d) Upon the expiration of thirty (30) days from the service of the notice issued pursuant to the provisions of DR–3(b)(2) above, this court shall impose the identical discipline unless the respondent-attorney demonstrates, or this court finds, that upon the face of the record upon which the discipline in another jurisdiction is predicated it clearly appears:

(1) that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process; or

(2) that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this court could not, consistent with its duty, accept as final the conclusion on that subject; or

(3) that the imposition of the same discipline by this court would result in grave injustice; or

(4) that the misconduct established is deemed by this court to warrant substantially different discipline.

Where this court determines that any of said elements exist, it shall enter such other order as it deems appropriate.

(e) In all other respects, a final adjudication in another court that an attorney has been guilty of misconduct shall establish conclusively the misconduct for purposes of a disciplinary proceeding in this court.

(f) This court may at any stage appoint special counsel to prosecute the disciplinary proceedings.

### DR–4 Disbarment on Consent or Resignation in Other Courts.

(a) Any attorney admitted to practice before this court who shall be disbarred on consent or resign from the bar of any other court of the United States or the District of Columbia or from the bar of any state, territory, commonwealth or possession of the United States while an investigation into allegations of misconduct is pending, shall, upon the filing with this court of a certified or exemplified copy of the judgment or order accepting such disbarment on consent or resignation, cease to be permitted to practice before this court and be stricken from the roll of attorneys admitted to practice before this court.

(b) Any attorney admitted to practice before this court shall, upon being disbarred on consent or resigning from the bar of any other court of the United States or the District of Columbia or from the bar of any state, territory, commonwealth or possession of the United States while an investigation into allegations of misconduct is pending, promptly inform the clerk of this court of such disbarment on consent or resignation.

### DR–5 Misconduct.

(a) For misconduct defined in these rules, and for good cause shown, and after notice and opportunity to be heard, any lawyer admitted or permitted to practice before this court may be disbarred, suspended from practice before this court, or subjected to such other public or private disciplin-

ary actions as the circumstances may warrant.

(b) Acts or omissions by a lawyer admitted or permitted to practice before this court, individually or in concert with any other person or persons, which violate the Standards for Professional Conduct adopted by this court shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship.

## DR–6 Disciplinary Proceedings.

(a) When misconduct or allegations of misconduct which, if substantiated, would warrant discipline of an attorney admitted or permitted to practice before this court shall come to the attention of this court, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these rules, the judge may follow either or both of the following procedures:

(1) refer the matter to any appropriate disciplinary agency with jurisdiction over said attorney with a request that the agency report its actions to the court provided, however, that in addressing any misconduct matter the court may consider such agency's actions but shall not be bound thereby;

(2) appoint one or more members of the bar of this court to act as special counsel to investigate the matter, to prosecute the matter in formal disciplinary proceeding under these rules, to make such other recommendation as may be appropriate, or to perform any other functions required by the court in its order of appointment.

(b) Should special counsel conclude after investigation and review that a formal disciplinary proceeding should not be initiated against the respondent-attorney because sufficient evidence is not present, or because there is another proceeding pending against the respondent-attorney, the disposition of which in the judgment of counsel should be awaited before further action by this court is considered, or for any other valid reason, counsel shall file with the court a recommendation for disposition of the matter, setting for the reasons therefore.

(c) To initiate formal disciplinary proceedings, special counsel shall, upon a showing of probable cause, obtain leave of this court to institute a disciplinary proceeding by filing a complaint against the respondent-attorney setting forth the allegations of misconduct. If leave of the court is obtained, the complaint and summons shall be promptly served as provided in DR–9.

(d) The respondent-attorney shall file an answer to the complaint within thirty (30) days after service. If any issue of fact is raised in the answer or if the respondent-attorney wishes to be heard in mitigation, this court shall set the matter for prompt hearing before one or more judges of this court provided, however, that if the disciplinary proceeding is predicated upon the complaint of a judge of this court, the hearing shall be conducted by another judge of this court, or, if no judge is eligible to serve, the hearing shall be before a judge of the District Court appointed by the Chief Judge of the District Court.

## DR–7 Disbarment on Consent While Under Disciplinary Investigation or Prosecution.

(a) Any attorney admitted to practice before this court who is the subject of an investigation into, or a pending proceeding involving, allegations of misconduct may consent to disbarment but only by delivering to this court an affidavit stating that the attorney desires to consent to disbarment and that:

(1) the attorney's consent is freely and voluntarily rendered; the attorney is not being subjected to coercion or duress; the attorney is fully aware of the implications of so consenting;

(2) the attorney is aware that there is a presently pending investigation or proceeding involving allegations that there exist grounds for the attorney's discipline, the nature of which the attorney shall specifically set forth;

(3) the attorney acknowledges that the material facts so alleged are true; and

(4) the attorney so consents because the attorney knows that if charges were predicated upon the matters under investigation or if the proceedings were prosecuted, the attorney could not successfully defend himself.

(b) Upon receipt of the required affidavit, this court shall enter an order disbarring the attorney.

(c) The Order disbarring the attorney on consent shall be a matter of public record. However, the affidavit required under the provisions of this rule shall not be publicly disclosed or made available for use in any other proceeding except upon order of this court.

**DR–8 Reinstatement.**

(a) After disbarment or suspension. An attorney suspended for three (3) months or less shall be automatically reinstated at the end of the period of suspension upon the filing with the court of an affidavit of compliance with the provisions of this order. An attorney suspended for more than three (3) months or disbarred may not resume practice until reinstated · by order of this court.

(b) Time of application following disbarment. A person who has been disbarred after hearing or by consent may not apply for reinstatement until the expiration of at least five (5) years from the effective date of the disbarment. A lawyer who has been suspended for more than six (6) months may not apply for reinstatement until six (6) months before the period of suspension has expired.

(c) Hearing on application. Petitions for reinstatement by a disbarred or suspended attorney under this rule shall be filed with the Chief Judge of the court. Upon receipt of the petition, the Chief Judge shall refer the petition to counsel and assign the matter for hearing before a judge of this court provided, however, that if the disciplinary proceeding was predicated upon the complaint of a judge of this court, the hearing shall be conducted before another judge of this court or, if there is no judge of this court eligible to serve, before a judge of the District Court appointed by the Chief Judge of the District Court. Within thirty (30) days after referral, the judge assigned to the matter shall schedule a hearing at which the petitioner shall have the burden of demonstrating by clear and convincing evidence that petitioner has the moral qualifications, competency, and learning in the law required for admission to practice law before this court and that petitioner's resumption of the practice of law will not be detrimental to the integrity and standing of the bar or to the administrations of justice or subversive of the public interest.

(d) Duty of special counsel. In all proceedings upon a petition for reinstatement, cross-examination of the witness of the respondent-attorney and the submission of evidence, if any, in opposition to the petition shall be conducted by counsel.

(e) Deposit for costs of proceeding. Petitions for reinstatement under this rule shall be accompanied by an advance cost deposit in an amount to be set from time

to time by the court to cover anticipated costs of the reinstatement proceeding.

(f) Conditions of reinstatement. If the petitioner is found unfit to resume the practice of law, the petition shall be dismissed. If the petitioner is found fit to resume the practice of law, the judgment shall reinstate him or her, provided that the judgment may make reinstatement conditional upon the payment of all or part of the costs of the proceedings and upon the making of partial or complete restitution to parties harmed by the petitioner whose conduct led to the suspension or disbarment. Provided further, that if the petitioner has been suspended or disbarred for five (5) years or more, reinstatement may be conditioned, in the discretion of the judge before whom the matter is heard, upon the furnishing of proof of competency and learning in the law, which proof may include certification by the bar examiners of a state or other jurisdictions of the attorney's successful completion of an examination for admission to practice subsequent to the date of suspension or disbarment.

(g) Successive petitions. No petition for reinstatement under this rule shall be filed within one (1) year following an adverse judgment upon a petition for reinstatement filed by or on behalf of the same person.

## DR–9 Service of Complaint, Papers and Other Notices.

Upon the filing of a complaint instituting a disciplinary proceeding, the clerk shall forthwith issue a summons and deliver the summons and a copy of the complaint in the matter provided in Fed.R.Bankr.P. 7004. The summons shall direct the respondent-attorney to serve an answer within thirty (30) days after service. An order of suspension shall be served in the same manner as a summons and complaint instituting a disciplinary proceeding. Service of any other papers or notices required by these rules shall be deemed to have been made if such paper or notice is addressed to the respondent-attorney at the attorney's last known address or to counsel or the respondent's attorney at the address indicated in the most recent pleading or other document filed by them in the course of any proceeding.

## DR–10 Duties of the Clerk.

(a) Upon being informed that an attorney admitted to practice before this court has been convicted of any crime, the clerk of this court shall determine whether the clerk of court in which such conviction occurred has forwarded a certificate of such conviction to this court. If a certificate has not been so forwarded, the clerk of this court shall promptly obtain a certificate and file it with this court.

(b) Upon being informed that an attorney admitted to practice before this court has been subjected to discipline by another court, the clerk of this court shall determine whether a certified or exemplified copy of the disciplinary judgment or order has been filed with this court, and, if not, the clerk shall promptly obtain a certified or exemplified coy of the disciplinary judgment or order and file it with this court.

(c) Whenever it appears that any person convicted of any crime or disbarred or suspended or censured or disbarred on consent by this court is admitted to practice law in any other jurisdiction or before any other court, the clerk of this court shall, within ten (10) days of that conviction, disbarment, suspension, censure, or disbarment on consent, transmit to the other court a certificate of the conviction or a certified exemplified copy of the judgment or order of disbarment suspension, censure, or disbarment on consent, as well

as the last known office and residence of the defendant or respondent.

(d) The clerk of this court shall, likewise, promptly notify the National Lawyer Regulatory Data Bank operated by the American Bar Association of any order imposing public discipline upon any attorney admitted to practice before this court.

(§ (d) amended 2/2/01).

## DR–11 Public Access and Confidentiality.

(a) Publicly Available Records. All filings, orders, and proceedings involving allegations of misconduct by an attorney shall be public, except:

(1) When the court, on its own initiative or in response to a motion for protective order, orders that such matters shall not be made public. While a motion for protective order is pending, the motion and any objection to the motion will be filed under seal.

(2) Any filing, proceeding, or order issued pursuant to DR–6 prior to the initiation of formal disciplinary proceedings under DR–6(c).

(b) Respondent's Request. The respondent attorney may request that the court make any matter public that would not otherwise be public under this rule.

(Prior rule stricken and replaced on 2/2/01)

## DR–12 Jurisdiction.

Nothing contained in these rules shall be construed to deny to this court such powers as are necessary for the court to maintain control over proceedings conducted before it.