# United States Court of Appeals

## For the First Circuit

No. 02-9007                                        Volume I of II

IN RE WILLIAM C. SHERIDAN,

WILLIAM C. SHERIDAN,

Defendant, Appellant,

v.

NANCY MICHELS,

Plaintiff, Appellee.

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL

OF THE FIRST CIRCUIT

Before

Selya, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lynch, Circuit Judge.

William C. Sheridan, pro se.
Nancy H. Michels, with whom the Law Offices of Michels &
Michels and Carole A. Mansur were on the brief for appellee.

March 29, 2004

**CYR, <u>Senior Circuit Judge</u>.** William C. Sheridan, Esquire, appeals from a bankruptcy court order which suspended him from the practice of law before the United States Bankruptcy Court for the District of New Hampshire and directed him to remit the fees due the special counsel appointed to investigate the various violations of the District of New Hampshire Rules of Professional Conduct for which Sheridan allegedly is responsible. We now vacate the bankruptcy court order, and remand for further proceedings.

## I.

## <u>BACKGROUND</u>

In June 2000, the bankruptcy judge appointed Attorney Nancy Michels as Special Counsel to investigate the ethical violations alleged against Sheridan, an attorney and member of the bankruptcy court bar. Following an extensive investigation into Sheridan's representation of various clients between 1999 and 2000, Special Counsel lodged a complaint charging Sheridan with rendering incompetent representation in violation of N.H. Rule of Professional Conduct 1.1(a).

Although Sheridan, acting <u>pro</u> <u>se</u>, eventually stipulated to most of the allegations in the complaint, he contended that his conduct had been due either to a dopamine deficiency resulting in severe attention deficit disorder or to the uncooperativeness and obstinacy of the affected clients. Following a disciplinary hearing in June 2001, the bankruptcy court determined that Sheridan

-2-

had committed eighty-eight ethical violations, most involving the failure to comply with such basic requirements as the timely filing of chapter 13 plans and motions for continuance.

In due course, Sheridan was suspended from practice before the bankruptcy court for one year; readmission contingent upon satisfactory proof that he was competent to represent clients before the bankruptcy court. Subsequently, the bankruptcy court approved an application for a $30,377.50 attorney fee to Special Counsel, then directed that Sheridan – as a precondition to his readmission to the bankruptcy bar – reimburse the bankruptcy court in that amount. Sheridan then appealed to the Bankruptcy Appellate Panel ("BAP"), which affirmed. Sheridan v. Michels (In re Disciplinary Proceedings), 282 B.R. 79 (B.A.P. 1st Cir. 2002).

**II.**

**DISCUSSION**

Sheridan contends that (i) the bankruptcy court, unlike Article III courts, lacks either the inherent or statutory power to suspend or discipline counsel who practice before it, see Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 86-87 (1982); (ii) moreover, even assuming the bankruptcy court possesses such disciplinary power, it cannot exercise it absent an explicit local court rule, but see U.S. Dist. Ct. Local Rule (D.N.H.) 83.5, and then only if the bankruptcy court were to determine that counsel acted in "bad faith," see Chambers v. NASCO, Inc., 501 U.S.

-3-

32, 45 (1991); (iii) Bankruptcy Code § 105 applies exclusively to such disciplinary proceedings against an attorney as arise in a particular, ongoing bankruptcy case, not to the instant type of omnibus investigation into alleged attorney misconduct spanning multiple bankruptcy cases no longer pending before the court;[1] (iv) Administrative Order 2090-2, issued by the bankruptcy court below, explicitly authorizing such disciplinary hearings, is invalid due to the fact that it was promulgated without either advance notice or an opportunity for public comment, notwithstanding the rule-making provisions enunciated in Federal Rule of Civil Procedure 83, cf. U.S. Dist. Ct. Local Rule (D.N.H.) 77.4(b) ("Pursuant to [Fed. R. Bankr. P] 9029, the bankruptcy judges of this district are authorized to make such rules of practice and procedure as they may deem appropriate, subject to the requirements of Fed. R. Civ. P. 83."); (v) in all events, Administrative Order 2090-2, which was not in effect at the time the bankruptcy court initiated the Sheridan investigation, cannot be applied retroactively; and (vi) the disciplinary power wielded by the bankruptcy court in the instant case offends the doctrine of separation of powers, in that the bankruptcy court itself thereby assumes the inherently conflicting roles of accuser, investigator, prosecutor, and judge.

---

[1]Bankruptcy Code § 105(a) provides, in pertinent part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

In the particular circumstances of the instant case, due to the fact that the BAP lacked appellate jurisdiction to address Sheridan's claims on the merits, the case must be remanded to the bankruptcy court for further proceedings. We explain.

The BAPs are authorized to review only the "final judgments, orders and decrees" issued by the bankruptcy courts. 28 U.S.C. § 158(b)(1), (a)(1). Consequently, in the instant context the dispositive jurisdictional issue is whether the disciplinary orders issued by the bankruptcy court against Sheridan were "final." See Stanley v. S.S. Retail Shoes Corp. (In re S.S. Retail Shoes Corp.), 162 F.3d 1230, 1232 (9th Cir. 1998) ("In making the [jurisdictional] determination, we must focus on the nature of the bankruptcy court's order. If that decision was not a final order, then the BAP's order also lacks finality.").

The finality of a bankruptcy court order depends, inter alia, upon whether the proceeding in which it was entered constitutes a "core" or "non-core" proceeding. Although the district court, as a tribunal established under Article III of the United States Constitution, possesses broad jurisdiction to adjudicate all proceedings which even tangentially "aris[e] under," or are "related to," a bankruptcy case [hereinafter: "related to" proceedings], the district court may opt to refer such cases or proceedings to the bankruptcy courts for hearing or adjudication. See 28 U.S.C. § 157(a). Of course, unlike the district court, the

-5-

bankruptcy court is established pursuant to Article I, rather than Article III, and its jurisdiction is delimited accordingly. Although the bankruptcy court may hear all "related-to" proceedings which have been referred to it, whether core or non-core, it may enter a final appealable judgment only if (i) the proceeding itself is core, viz., closely intertwined with and integral to the bankruptcy court's mandate to administer a bankruptcy case; or (ii) the case or proceeding is non-core, but the litigants nonetheless have consented to the entry of a final disposition by the bankruptcy court, rather than by the district court. See Northern Pipeline, 458 U.S. at 86-87.

If the proceeding is core, the bankruptcy court's final judgment is immediately appealable either to the district court or, with the consent of the parties, to the BAP. 28 U.S.C. § 158(b)(1); § 157(b)(1). In either instance, the appellate tribunal applies a deferential standard of review to the bankruptcy court's findings of fact, and will upset those findings only if clearly erroneous. See In re Spadoni, 316 F.3d 56, 58 (1st Cir. 2003).

In a non-core proceeding, however, the bankruptcy court is not empowered to enter final, appealable orders without the parties' consent. Instead, after it has conducted the required proceedings, it must submit its proposed findings of fact and conclusions of law for consideration by the district court. See 28 U.S.C. § 157(c)(1); Cong. Credit Corp. v. AJC Int'l, Inc., 42 F.3d

686, 690 (1st Cir. 1994). The role of the district court in turn is to conduct de novo review of the findings of fact and the conclusions of law submitted by the bankruptcy court. In so doing, the district court may receive further evidence, modify the findings proposed by the bankruptcy court, and/or remand to the bankruptcy court with instructions. See Fed. R. Bankr. P. 9033(d). At that stage, any appeal from the "final" district court order may be taken only to the court of appeals, which applies a deferential standard of review. Id. § 158(d).

In the instant case, the BAP did not address the core/non-core distinction in its decision, Sheridan, 282 B.R. at 86-89, perhaps because Sheridan's reference to it – included amongst other objections, in his appellate briefs, to the bankruptcy court's authority to impose sanctions – simply was not prominently advanced or distinguished. Unlike the issue of subject matter jurisdiction, which may neither be waived nor forfeited by the parties, see Quinn v. City of Boston, 325 F.3d 18, 26 (1st Cir. 2003), and into which the courts are duty-bound to inquire, sua sponte, even absent objection by any party, see Hicks, Muse & Co. v. Brandt (In re Healthco Int'l, Inc.), 136 F.3d 45, 50 n.4 (1st Cir. 1998), the protections afforded by the Northern Pipeline core/non-core distinction may be waived or forfeited, either by (i) consenting to the bankruptcy court's treatment of an otherwise non-core proceeding as core, or (ii) failing to raise or pursue the

-7-

issue adequately on appeal. See Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 848-49 (1986).

Although normally the proper designation of a proceeding as either core or non-core presents a pure question of law, subject to plenary review on appeal, see In re V & M Mgmt., Inc., 321 F.3d 6, 7 (1st Cir. 2003); In re Graves, 279 B.R. 266, 270 (B.A.P. 9th Cir. 2002), if Sheridan failed to preserve his contention before the bankruptcy court or on appeal, we would review for plain error only, see Rivera-Torres v. Ortiz Velez, 341 F.3d 86, 102 (1st Cir. 2003) ("[C]laims 'forfeit[ed] through ignorance or neglect' are subject to plain error review.") (citation omitted). We now turn to these threshold issues.

## A.    Consent

Before the bankruptcy court, Sheridan did not expressly consent, either orally or in writing, to the treatment of his omnibus disciplinary proceeding as core.[2]  In In re G.S.F. Corp.,

---

[2]The advisory committee note to Federal Rule of Bankruptcy Procedure 7008, which implements the statutory core/non-core dichotomy, provides:

> Proceedings before a bankruptcy judge are either core or non-core. 28 U.S.C. § 157. A bankruptcy judge may enter a final order or judgment in a core proceeding. In a non-core proceeding, absent consent of the parties, the bankruptcy judge may not enter a final order or judgment but may only submit proposed findings of fact and conclusions of law to the district judge who will enter the final order or judgment. 28 U.S.C. § 157(c)(1). The amendment to subdivision (a) of this rule requires an allegation as to whether a proceeding is core or non-core. A party who alleges that the proceeding is

938 F.2d 1467 (1st Cir. 1991), we decided that in certain circumstances, at least where the parties' actions appear to speak as clearly as words, consent may be implied. The actions deemed to have evidenced "implied consent" in G.S.F. consisted of (i) the filing of stipulations and releases by the parties "for entry as a final judgment" in the bankruptcy court, which stipulations and releases subsequently were incorporated into the final order whereby the bankruptcy court dismissed the proceeding, and (ii) the decision by the parties not to appeal from that "final" order. Id. at 1477. Thus, it was their affirmative and unambiguous conduct before the bankruptcy court – rather than their mere failure to request prior to judgment that the proceeding be declared non-core – which constituted the functional equivalent of the parties' express consent. See infra note 5.

In contrast, Sheridan's conduct did not unambiguously connote consent, either to the bankruptcy court's characterization of the proceeding as core or to its final adjudication of the

non-core shall state whether the party does or does not consent to the entry of a final order or judgment by the bankruptcy judge. Failure to include the statement of consent does not constitute consent. Only express consent in the pleadings or otherwise is effective to authorize entry of a final order or judgment by the bankruptcy judge in a non-core proceeding. Amendments to Rule 7012 require that the defendant admit or deny the allegation as to whether the proceeding is core or non-core.

Fed. R. Bankr. P. 7008 advisory committee's note (1987) (emphasis added).

proceeding as non-core. It is true that Sheridan did not suggest that the proceeding was non-core until he submitted the post-judgment motion for reconsideration, cf. Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998) (noting that party normally may not raise new issues in post-judgment motion for reconsideration), but the entry of the judgment was the first procedural juncture in the bankruptcy proceeding in relation to which the core/none-core issue was broached. Until then, it remained unclear how the bankruptcy court viewed its own jurisdiction.

To be sure, Sheridan could have elected to place the issue in contention sooner, but the failure to do so can bear no inference of consent. When the district court refers a "related to" proceeding to the bankruptcy court, no presumption attaches that the proceeding is core. Indeed, the Rules of Bankruptcy Procedure, which serve to implement the statute itself, mandate that the complaint contain a statement or allegation regarding whether the proceeding is core or non-core, and if the latter, whether the plaintiff consents to the entry of a final judgment by the bankruptcy court. See Fed. R. Bankr. P. 7008(a). The complaint filed by Special Counsel failed to place the issue in contention by alleging that the proceeding was core. In cases where the plaintiff (e.g., Special Counsel Michels) has the burden to plead the core/non-core issue, and has chosen the bankruptcy court as her forum, her silence might connote consent. See, e.g.,

-10-

Horwitz v. Alloy Auto. Co., 992 F.2d 100, 103 (7th Cir. 1993) ("Silence does not imply consent, but affirmatively invoking the bankruptcy court's jurisdiction most assuredly supplies whatever consent is necessary.") (citations omitted). As Michels is not the appellant, and appellant Sheridan did not initiate the disciplinary proceeding, we need not address this issue.[3]

Similarly, Bankruptcy Rule 7012(b) prescribes that the defendant's answer "shall admit or deny an allegation that the proceeding is core or non-core," and that "[i]n non-core proceedings[,] final orders and judgments shall not be entered on the bankruptcy judge's order except with the express consent of the parties." By implication, therefore, there was no need for the Sheridan answer to challenge the core nature of the proceedings

---

[3]The dissent relies upon various cases, some cited with approval in In re G.S.F., in which the specific issue involved consent by a party – unlike Sheridan – who had invoked the bankruptcy court's jurisdiction. See Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 398 (4th Cir. 1992) (noting that appellant was plaintiff in adversary proceeding); Mann v. Alexander Dawson, Inc. (In re Mann), 907 F.2d 923, 925-26 (9th Cir. 1990) (same); Daniels-Head & Assocs. v. William M. Mercer, Inc. (In re Daniels-Head & Assocs.), 819 F.2d 914, 919 (9th Cir. 1987) (same); Pisgah Contractors, Inc. v. Rosen (In re Pisgah Contractors, Inc.), 215 B.R. 679, 682 (W.D.N.C. 1995) ("[B]y asserting a counterclaim against the debtor in the adversary proceeding, the Rosens subjected themselves to the equitable power of the Bankruptcy Court."); Jefferson Nat'l Bank v. I.A. Durbin, Inc. (In re I.A. Durbin, Inc.), 62 B.R. 139, 143 (S.D. Fla. 1986) (finding implied consent where counterclaimant-appellant had joined in a third party's counterclaim, knowing that her co-complainant already had admitted that her counterclaim involved a core proceeding); cf., e.g., Marshall v. Mich. Dep't of Agric. (In re Marshall), 118 B.R. 954, 960 (W.D. Mich. 1990) (refusing to find implied consent where appellant's counterclaim was compulsory).

due to the fact that the complaint made no such allegation.[4]

Moreover, absent the parties' allegations, the bankruptcy court is required in all cases to make a <u>sua</u> <u>sponte</u> determination as to whether or not a proceeding is core, 28 U.S.C. § 157(b)(3) ("The bankruptcy judge <u>shall</u> determine, <u>on</u> <u>the</u> <u>judge's</u> <u>own</u> <u>motion</u> or on timely motion of a party, whether a proceeding is a core proceeding.") (emphasis added), and it seems quite clear that this provision would have been phrased very differently were the Congress to have intended that all "related to" proceedings referred to the bankruptcy court were to be deemed presumptively core.

Of course, whether the Sheridan proceeding was core or non-core, the bankruptcy court was empowered to <u>hear</u> the case and receive evidence. <u>See</u> 28 U.S.C. § 157(c)(1) ("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11."). Thus, the core/non-core distinction would have significance primarily at the time of judgment, when it would become necessary to characterize the bankruptcy court order either as a final judgment (<u>viz.</u>, enabling

---

[4]Again, the dissent relies upon inapposite case law and authorities wherein the defendant-appellant's answer had failed to deny an express allegation of core jurisdiction. <u>See</u> <u>Pisgah</u> <u>Contractors</u>, 215 B.R. at 682; <u>Aero-Fastener, Inc.</u> v. <u>Sierracin</u> (<u>In re Aero-Fastener, Inc.</u>), 177 B.R. 120, 132 (Bankr. D. Mass. 1994); 1 Lawrence P. King, <u>Collier on Bankruptcy</u> § 3.02[6][b] ("The effect of failure to interpose an objection <u>at</u> <u>the</u> <u>pleading</u> <u>stage</u> should be consent to the final order being entered by the bankruptcy judge.") (emphasis added).

-12-

an immediate appeal either to the district court or the BAP), or as a recommended decision (viz., necessitating its referral back to the district court for entry of a final, appealable judgment).[5]

Thus, in the instant case, until the bankruptcy court entered its "final" judgment characterizing the disciplinary proceeding as core, Sheridan was not placed on notice, either by the bankruptcy court or Special Counsel, that the hearing would be so characterized. Finally, Sheridan objected at the earliest available opportunity by submitting a timely postjudgment motion for reconsideration.[6] Accordingly, in these circumstances we

---

[5]In contrast to our limited holding in G.S.F., other courts have split on the issue as to whether Bankruptcy Code § 157(c) consent may be implied merely from the party's failure to object, in a timely manner, to the hearing of the proceeding by the bankruptcy court. Compare, e.g., In re Hatfield, 117 B.R. 387, 388 n.1 (Bankr. C.D. Ill. 1990) (drawing such inference), with Cont'l Airlines, Inc. v. First Sec. Bank of Utah, N.A. (In re Cont'l Airlines, Inc.), 146 B.R. 534, 536 (Bankr. D. Del. 1992) ("Implied consent is not sufficient to waive constitutional [core/non-core] jurisdiction."). The rationale for those former cases, propounding the broad rule now embraced by our dissenting colleague, is not consonant with either the provisions in or the commentary to Federal Rule of Bankruptcy Procedure 7008, which plainly require "express consent." See supra note 2. Moreover, that rationale ignores the important reality that the bankruptcy court is empowered to conduct hearings in both core and non-core proceedings. See 28 U.S.C. § 157(c)(1). Thus, a party which acquiesces in the bankruptcy court's decision to hear the case would not necessarily presume that the court intended its post-hearing decision to be final, as distinguished from recommendatory.

[6]The primary authority the dissent cites for its expansive interpretation of consent involved proceedings in which the courts determined that the appellants (unlike Sheridan) failed to object even after the bankruptcy court had entered a "final" judgment. See McFarland v. Leyh (In re Tex. Gen. Petroleum Corp.), 52 F.3d 1330, 1337 (5th Cir. 1995) (finding an implied waiver because

-13-

conclude that the actions taken by Sheridan did not sufficiently connote consent to the final adjudication of the omnibus disciplinary proceeding by the bankruptcy court.

## B. **Waiver/Forfeiture**

In light of the BAP's failure to address the core/non-core issue, however, <u>see</u> Sheridan, 282 B.R. at 86-89, we now must determine whether Sheridan's argumentation on the core/non-core issue, as set forth both in his postjudgment motion for reconsideration and his appellate briefs before the BAP and this court, is sufficiently clear and developed to focus appellate

---

defendant-appellant "fail[ed] to object in the bankruptcy court," appealed to the district court instead of seeking <u>de novo</u> review, and "his objection to jurisdiction at this stage [<u>viz.</u>, on appeal to the court of appeals] 'more closely resembles an afterthought'") (citation omitted); <u>Abramowitz</u> v. <u>Palmer</u>, 999 F.2d 1274, 1276 (8th Cir. 1983) (implied consent found where defendant-appellant did not raise her non-core argument before the bankruptcy court, she appealed the bankruptcy court's dischargeability decision to the district court, rather than seeking its <u>de novo</u> review, and she raised her non-core argument "for the first time" before the court of appeals); <u>Canal Corp.</u> v. <u>Finnman</u> (<u>In re Johnson</u>), 960 F.2d 396, 403 (4th Cir. 1992) (implied consent found because plaintiff-appellants were "apparently content" when bankruptcy court entered its "final" judgment to distribute monies to appellants, and objected only after the bankruptcy court had modified its judgment so as to reallocate the monies among various members of the plaintiff class); <u>Men's Sportswear, Inc.</u> v. <u>Sasson Jeans, Inc.</u> (<u>In re Men's Sportswear, Inc.</u>), 834 F.2d 1134, 1138 (2d Cir. 1987) (noting that appellant failed to raise non-core issue even after bankruptcy court issued its judgment explicitly declaring the proceeding core, and even on appellant's appeal to the district court); <u>DuVoisin</u> v. <u>Foster</u> (<u>In re S. Indus. Banking Corp.</u>), 809 F.2d 329, 331 (6th Cir. 1987) (finding implied consent where defendant-appellant's answer (i) stated without qualification that bankruptcy court had "jurisdiction," (ii) raised no jurisdictional challenge before judgment, and (iii) marked the bankruptcy court order as "agreed for entry").

attention upon the merits of the core/non-core issue. See Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 27 (1st Cir. 2003) (noting that issues raised in perfunctory manner on appeal are deemed waived). Our review reveals that Sheridan lumped together a host of jurisdictional and non-jurisdictional challenges predicated upon the central premise that the bankruptcy court lacked any "authority" whatsoever to impose monetary sanctions as a condition precedent to his reinstatement to the bar. Given this circumstance, therefore, we understand how the issue may have eluded the BAP's attention.

Although it may be that Sheridan, had he been represented by counsel,[7] would have advanced his argument more prominently and distinctly than was done in his pro se submissions, we cannot fairly conclude that Sheridan failed either to raise the argument, or to discuss the criteria most pertinent to the core/non-core analysis. For instance, in his motion for reconsideration Sheridan plainly contended: "As such the Bankruptcy [C]ourt does not share all the powers of the district court. Thus in [Northern Pipeline], the United States Supreme Court held that it was unconstitutional for the Bankruptcy Courts to exercise the 'essential attributes of

---

[7]By way of bolstering its inference that Sheridan consented, the dissenting opinion adverts to Sheridan as "an experienced bankruptcy attorney," while failing to acknowledge that these disciplinary proceedings arose, at least in part, from Sheridan's numerous physical ailments and mental impairments. The district court has yet to be accorded the opportunity to make the requisite findings of fact on this issue.

-15-

the judicial power of the Article III district court,' and that the bankruptcy court's power was limited to 'core proceedings' of the administration of the bankruptcy estate under the bankruptcy code, 28 U.S.C. § 157(b)(1)." (Emphasis added; citations omitted.)

Not only is Northern Pipeline the seminal case on the constitutional limitations which undergird the pivotal core/non-core distinction, but the utter absence of a close nexus between the Sheridan disciplinary proceeding and the administration of any particular pending bankruptcy proceeding is a crucial consideration in resolving the core/non-core issue. See 28 U.S.C. § 157(b)(2)(A) (noting that core proceedings involve, inter alia, "matters concerning the administration of the estate") (emphasis added); infra Section II.C. Moreover, Sheridan reiterated the same argument verbatim, both before the BAP and in the instant appeal, by relying upon the same citation to, and paraphrase of, the Northern Pipeline holding, then adding: "The disciplinary order in each of the cases cited by the [BAP] arose out of and during the administration of a single bankruptcy estate." (Emphasis added.) Thus, though Sheridan might have asserted the issue with somewhat more prominence and clarity, we are hard-pressed to find, on these submissions, that the argument was conclusively forfeited. "[A] court should not lightly infer from a litigant's conduct consent to have private state-created rights adjudicated by a non-Article III bankruptcy judge. Indeed, to do so would violate the spirit of

-16-

[Northern Pipeline]." In re Men's Sportswear, Inc., 834 F.2d 1134, 1138 (2d Cir. 1987).[8]

No less importantly, even in the event we were to conclude that Sheridan forfeited the instant issue below, see

_____

[8]Nor can the Sheridan decision to appeal to the BAP, rather than the district court, be deemed implied consent. Normally, a bankruptcy court decision in a non-core proceeding is not appealable to the BAP, but must be taken to the district court. Here, however, the bankruptcy court purportedly entered a decision on the merits in what it termed a core proceeding, thereby rendering its judgment (unless vacated on appeal) final and appealable. See In re M.A. Baheth Constr. Co., 118 F.3d 1082, 1084 (5th Cir. 1997) ("Until and unless the determination of bankruptcy court jurisdiction is overturned, Baheth was bound to comply with the court's judgment – and the procedural consequences thereof."). Appeals from such a judgment lie either with the BAP or the district court, sitting in its appellate capacity. See 28 U.S.C. § 158(c)(1). Thus, either the BAP or the district court would have jurisdiction to determine whether the bankruptcy court's designation of the proceeding as core constituted reversible error. We find equally enigmatic the related suggestion in the dissenting opinion that Sheridan expressly abandoned his objection to the bankruptcy court's core treatment of the proceeding. In his 15-page supplemental brief Sheridan vehemently disputes that he ever consented, asserting instead that he promptly raised the core/non-core issue in his motion for reconsideration before the bankruptcy court. Michels, the party whose burden it was to allege that the proceeding was core, declined our invitation to submit supplemental briefing. Sheridan did note that he would "take[] no position" on the non-core issue, but not because he conceded that it lacked merit, nor that it was not in his interest to pursue it. Instead, he noted that it was supported by "ample authority." He believed (albeit incorrectly) that the jurisdictional issue became relevant only if we were to find that the bankruptcy court had issued the sanction under Administrative Order 2090-2 only, and not pursuant to Bankruptcy Code § 105. This is a far cry from abandonment. Assuming that further evidence that Sheridan had not abandoned this claim was needed, however, his supplemental brief, in its final citation, points to In re BNI Telecommuns., 246 B.R. 845, 849 (B.A.P. 6th Cir. 2000), a case in which the Sixth Circuit reversed a bankruptcy court for improperly entering a final judgment in a non-core proceeding without appellant's consent.

Mulvihill, 335 F.3d at 27, it is within our discretion to address an issue de novo, in those rare instances where the issue poses "purely a question of law; where addressing the merits promotes judicial economy as the same issue will likely be raised in other cases; and the claim raises an issue of constitutional magnitude, which if meritorious, could substantially affect the rights of creditors and debtors in this and future bankruptcy proceedings." In re Weinstein, 164 F.3d 677, 685 (1st Cir.) (reaching unpreserved Fifth Amendment Takings Clause issue), cert. denied, 527 U.S. 1036 (1999); United States v. La Guardia, 902 F.2d 1010, 1013 (1st Cir. 1990) (reaching unpreserved due process challenge to sentencing guidelines).

The core/non-core argument advanced by Sheridan suits the bill on all three criteria. The question as to whether the proceeding is core or non-core poses a pure question of law, subject to plenary appellate review. See In re Graves, 279 B.R. at 270. As the extended procedural travel of this case amply demonstrates, the proper characterization, ab initio, of this type of omnibus disciplinary proceeding – as either core or non-core – is likely to minimize substantially the waste of judicial resources in future cases. For example, had this proceeding been considered non-core from the outset, the Sheridan appeals to the BAP and to this court could not have occurred, the case would have proceeded directly to the district court to decide whether to adopt or reject

-18-

the recommended findings of fact and legal conclusions made by the bankruptcy court, and Sheridan may well have averted almost two years of suspension from his professional livelihood.[9]

Finally, the core/non-core distinction advanced in Northern Pipeline unquestionably is one of constitutional import, in that it concerns the authority of an Article I court to enter a final judgment in a non-core proceeding absent the consent of the parties. Thus, even assuming we were to conclude that Sheridan's presentation of the core/non-core contention before the bankruptcy court and the BAP was inadequate, we would consider this case an appropriate one in which to conduct de novo review, rather than plain error review.[10]

---

[9]The consequences of the core/non-core determination cannot fairly be understated. Thus, if the bankruptcy court decision were not a final judgment, but merely a recommendation for entry of judgment, the Sheridan suspension from law practice would be premature, and could never have taken effect unless and until the district court adopted the recommended decision entered by the bankruptcy court. Similarly, had the district court adopted the bankruptcy court recommendation, the issues upon which Sheridan might base his appeal would be drastically altered. That is to say, in that event the question would not be whether the bankruptcy court rules or administrative orders authorized this type of sanction, but whether the district court's rules and orders authorized such a sanction. See U.S. Dist. Ct. Local Rule (D.N.H.) 83.5.

[10]With respect, we must note that our dissenting colleague's disapproval of our recourse to the La Guardia exception flows from several faulty premises. The dissent insists that Sheridan did not raise the core/non-core issue on appeal or if he did, inexplicably abandoned it after devoting several pages of supplemental briefing to a denial that he consented to core treatment. See supra note 8. The dissent further states that the non-core issue is not one of constitutional dimension. To the contrary, even the authorities

-19-

## C.    **Core vs. Non-core**

Notwithstanding the jurisdictional issues raised by Sheridan, see supra, the bankruptcy court failed to elaborate upon its rationale for ruling that the instant omnibus disciplinary action constitutes a core proceeding. See 28 U.S.C. § 157(b)(3). Generally speaking, a proceeding which "arises under" the bankruptcy laws is considered core. See 28 U.S.C. § 157(b)(1);

cited by the dissent acknowledge that Northern Pipeline, which § 157 purports to implement, involved a litigant's constitutional right to have his case heard by an Article III court. See, e.g., In re Tex. Gen. Petroleum Corp., 52 F.3d at 1336 ("[Appellant's core/non-core] argument, however, is a constitutional one based on Article III.  We must undertake the constitutional analysis."). The dissent then mischaracterizes our delineation of the factors which render this particular type of omnibus disciplinary proceeding non-core as involving a factual determination, whereas it is a purely legal determination as to what essential attributes of this proceeding satisfy the legal criteria set forth in § 157(b)(2).  See, e.g., In re Graves, 279 B.R. at 270 (noting that the core/noncore determination is a question of law). The dissent further contends that the legal argument for characterizing the Sheridan disciplinary proceeding as non-core is not compelling, even though the dissent cites no contrary authority directly on point, and the Sheridan disciplinary proceeding meets none of the criteria set forth in Bankruptcy Code § 157(b)(2).  See infra Section II.C.; Eleccion v. Sogge (In re Hessinger & Assocs.), 192 B.R. 211, 219-20 (N.D. Cal. 1996) (holding that omnibus disciplinary proceedings are non-core).  Finally, despite its admission that these types of omnibus proceedings have occurred in the past, the dissent rejects our resort to the La Guardia exception based on its surmise that the bankruptcy courts are not likely to resort to such omnibus disciplinary proceedings in the future.  One readily can envision, however, that an Article I court – once reassured that it is exercising its core authority – would be hard put to resist the streamlined disciplinary procedures and finality afforded by these proceedings.

<u>Boroff</u> v. <u>Tully</u> (<u>In re Tully</u>), 818 F.2d 106, 108 (1st Cir. 1987).[11] This statutory provision prescribes a non-exhaustive exemplar of core proceedings, 28 U.S.C. § 157(b)(2)(A)-(O), including the allowance and disallowance of proofs of claim, orders to turn over property to the estate, proceedings to avoid preferences or fraudulent conveyances, motions to lift automatic stays, and the adjudication of objections to discharge. Importantly, each of the enumerated matters relates to a function essential to the administration of the bankruptcy case.

In addition to these more particular functions, there are two broadly phrased categories which relate more generally to other

---

[11]The dissent advances but two arguments premised upon authority which predates the enactment of § 157(b). First, it proposes the following syllogism: (1) all non-core proceedings involve state contract claims, <u>see</u> <u>Thomas</u> v. <u>Union Carbide Agric. Prods. Co.</u>, 473 U.S. 584 (1985); (2) the Sheridan disciplinary proceeding involved no such claim; and (3) consequently, the Sheridan disciplinary proceeding is not a non-core proceeding. The initial premise is flawed, however. <u>Thomas</u> simply describes its <u>Northern Pipeline</u> holding, but does not announce that the Court would forbear in future cases from extending the <u>Northern Pipeline</u> rationale to other types of analogous claims. Second, the dissent cites our decision in <u>In re Arnold Print Works, Inc.</u>, 815 F.2d 165 (1st Cir. 1987), for the proposition that attorney disciplinary actions against attorneys do not involve private contract-based rights, but "public rights" which non-Article III courts have always been permitted to adjudicate. However, <u>Arnold</u> addresses the somewhat arcane public rights doctrine, which describes a very narrow category of claims of a sort which Article III courts are institutionally capable of adjudicating, but which historically were resolved instead by legislative or administrative courts. <u>See</u> <u>Northern Pipeline</u>, 458 U.S. at 67-68. Obviously, attorney disciplinary actions, long within the province of the federal courts, do not comport with this specialized "public rights" definition.

"matters concerning the administration of the estate," id. §
157(b)(2)(A), and "other proceedings affecting the liquidation of
the assets of the estate or the adjustment of the debtor-creditor
or the equity security holder relationship, except personal injury
tort or wrongful death claims," id. § 157(b)(2)(O). It is
important to note that the matters adumbrated in Bankruptcy Code §
157(b)(2)(A) and (O) likewise typically arise within the context of
a particular bankruptcy case, and are essential to the efficient
administration of the bankruptcy case.[12] Thus, to the extent that
attorney misconduct may have thwarted the efforts of the bankruptcy
court to bring a particular bankruptcy proceeding efficiently to
conclusion, it is at least arguable that attorney disciplinary
proceedings occurring during such a case can be classified as core.

On the other hand, the omnibus disciplinary proceeding
initiated against Sheridan is essentially different, in that the
ethical violations in which Sheridan allegedly engaged, for the

---

[12]The dissenting opinion suggests, incorrectly, that we rely
upon the expressio unius principle to interpret § 157(b), thereby
ignoring the explicit nonexclusivity of the § 157(b)(2) listing.
See Lohnes v. Level 3 Communications, Inc., 272 F.3d 49, 61 (1st
Cir. 2001) ("[T]he maxim expressio unius est exclusio alterius
instructs that, 'when parties list specific items in a document,
any item not so listed is typically thought to be excluded.'")
(citation omitted). On the contrary, any attempted extrapolation
of the § 157(b)(2) listing must be guided by reference to those
essential characteristics which the listed proceedings share in
common, see Aceros Prefabricados, S.A. v. TradeArbed, Inc., 282
F.3d 92, 101-02 (2d Cir. 2002); Collier v. Gray, 167 F.3d 977, 981
(6th Cir. 1999), and unlike the Sheridan omnibus disciplinary
proceeding, all of the proceedings in the § 157(b) listing arise as
part of the ongoing administration of "the" bankruptcy estate.

most part, occurred during the course of numerous bankruptcy cases previously closed, rather than in a pending bankruptcy proceeding, thus cannot be said to have involved the sort of routine case "administration" described in § 157(b)(2). Unlike disciplinary actions brought against counsel in the course of an ongoing bankruptcy case,[13] the Sheridan disciplinary proceedings did not purport to adjust the legal relationships among the parties in these closed bankruptcy cases, but consisted largely of the bankruptcy court's exercise of its supervisory responsibility to oversee and regulate its bar so as to safeguard public confidence in the integrity and functionality of the bankruptcy court. See, e.g., Eleccion v. Sogge (In re Hessinger & Assocs.), 192 B.R. 211, 219-20 (N.D. Cal. 1996) (noting that disciplinary action conducted outside particular bankruptcy proceeding is non-core, "concerned solely with the issue of the [law] firm's professional misconduct [as defined by the California Rules of Professional Conduct] and addressed neither the assets of any bankruptcy estate nor the adjustment of debtor-creditor relations").[14] Indeed, no present or

---

[13]All the cases the dissent cites in support of the so-called "core comes from core" principle involved discipline imposed for attorney misconduct in a single, ongoing bankruptcy case. See, e.g., In re Mem'l Estates, Inc., 950 F.2d 1364, 1370 (7th Cir. 1991) (finding that sanction "affect[ed] the liquidation of the assets of the estate").

[14]In advancing its contention that this court cites no authority for the proposition that the § 157(b) listing restricts core proceedings to those which arise as part of the administration of a single bankruptcy case, the dissent fails to acknowledge

former <u>client</u> ever lodged a complaint against Sheridan.

Although a determination that Sheridan breached ethical canons could conceivably enable these closed cases to be reopened, possibly with a view to recovering attorney fees paid to him by the respective estates, <u>cf.</u>, <u>e.g.</u>, <u>id.</u> at 220 (distinguishing non-core omnibus disciplinary action from two other cases under review where attorney sanctions were "pursued in the course of processing a bankruptcy petition," and where "finding that a law firm violated the Rules [of Professional Conduct] could lead to that firm forfeiting its fees . . . and such forfeiture would 'affect the liquidation of the assets of the estate'"),[15] the disciplinary action against Sheridan had no such purpose or effect, since its remedial goal focused exclusively upon Sheridan's fitness to represent clients in <u>future</u> bankruptcy cases, rather than upon any

_____

<u>Hessinger</u>, the one and only extant case directly on point. In response, the dissent cites a string of cases involving omnibus disciplinary proceedings, while conceding that the parties in all those cases (unlike in <u>Hessinger</u>) <u>never raised</u> the core/non-core issue for resolution by those courts. <u>See</u>, <u>e.g.</u>, <u>Household Credit Servs., Inc.</u> v. <u>Dragoo</u> (<u>In re Dragoo</u>), 219 B.R. 460 (Bankr. N.D. Tex. 1998).

[15]Similarly, some courts have held that the bankruptcy court may issue "final" contempt orders in an ongoing case to discipline counsel for noncompliance with <u>court orders</u>, since noncompliance obviously hampers the efficacy of liquidation and reorganization proceedings. <u>See</u> <u>In re Woodward</u>, 229 B.R. 468, 477 (Bankr. N.D. Okla. 1999); <u>cf.</u> <u>Volpert</u> v. <u>Volpert</u> (<u>In re Volpert</u>), 186 B.R. 240, 245 (N.D. Ill. 1995) (noting that sanctions imposed under Fed. R. Bankr. P. 9001 for dilatory conduct by counsel in an ongoing bankruptcy case are core matters), <u>aff'd</u>, 110 F.3d 494 (7th Cir. 1997).

recoupment of estate funds attributable to Sheridan's misconduct. Thus, no matter what the outcome of the disciplinary proceeding against Sheridan, no pending or closed bankruptcy case would be affected unless further independent proceedings were instituted in the future.  At the present juncture, however, any prediction of such an eventuality would be pure speculative.  <u>See</u>, <u>e.g.</u>, <u>Warren v. Calania Corp.</u>, 178 B.R. 279, 281 (M.D. Fla. 1995) (holding that attorney disciplinary proceedings were not core, since "[t]he fact that potential proceeds of the action may be distributed by the [bankruptcy] court <u>if</u> an award is received is not enough").

Omnibus disciplinary proceedings predicated upon alleged violations of ethical rules are further distinguishable in that the rights protected thereby do not derive from the Bankruptcy Code, but from state law, <u>viz.</u>, in this instance, the New Hampshire Rules of Professional Conduct.  <u>See</u> <u>In re G.S.F. Corp.</u>, 938 F.2d at 1475 (noting that core proceedings normally involve rights derived from bankruptcy law, and "depend on the Bankruptcy [Code] for their existence"); <u>Bethlahmy</u> v. <u>Kuhlman</u> (<u>In re ACI-HDT Supply Co.</u>), 205 B.R. 231, 236 (B.A.P. 9th Cir. 1997) ("[A] proceeding 'will not be considered a core matter, even if it falls within the literal language of § 157(b)(2)(A) or 157(b)(2)(O), if it is a state law claim that could exist outside of bankruptcy and is not <u>inextricably</u> <u>bound</u> to the claims allowance process or a right created by the Bankruptcy Code.'") (citation omitted); <u>Jackson</u> v.

-25-

Wessel (In re Jackson), 90 B.R. 126, 129 (Bankr. E.D. Pa. 1988) ("'[C]ontroversies that do not depend on the bankruptcy laws for their existence – suits that could proceed in another court even in the absence of bankruptcy – are not core proceedings.'") (citation omitted), aff'd, 118 B.R. 243 (E.D. Pa. 1990). Indeed, the standards for admission to the bar of the United States District Court for the District of New Hampshire essentially "piggyback" upon the state's rules of professional conduct (albeit that state law is expressly adopted by the federal court in the particular jurisdiction). See U.S. Dist. Ct. Local Rule (D.N.H.) 83.1(a) ("Any member in good standing of the bar of the Supreme Court of New Hampshire is eligible for admission."). Although the predominance of state-law issues, standing alone, cannot be determinative, see 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law.") (emphasis added), undoubtedly it is one relevant factor in the core/non-core inquiry.[16]

---

[16]The dissent contends that rules regulating attorney conduct in federal court are strictly a matter of federal law, not state law. We do not disagree. Our point is simply that the source of the rules governing Sheridan's case is the state rules, which in this instance were adopted wholesale as the federal district court's own rules. Cf. In re Snyder, 472 U.S. 634, 645 n.6 (1985) (noting that state rules were not applicable in federal court because "[t]he state code of professional responsibility [did] not by its terms apply to sanctions in federal court"). Nor does our case involve the wholly distinct question as to whether to apply a federal rule or a state rule which proscribes the identical

-26-

Moving beyond the explicit constraints in the statute itself, sound policy concerns likewise compel such distinctions. Where, as here, the attorney misconduct occurred neither in the context of an ongoing bankruptcy case, nor in the presence of the bankruptcy court, the bankruptcy court may have no better vantage from which to make final findings of fact than would the district court. See Fed. R. Bankr. P. 9033(d) (empowering district court to receive further evidence before deciding whether to adopt bankruptcy court's recommended decision). Consequently, this sort of omnibus disciplinary proceeding is far different from the johnny-on-the-spot disciplinary proceedings relating to errant attorney conduct occurring during an ongoing bankruptcy case, which may be essential to the fair and efficient administration of the

conduct. See In re Larry's Apartment, L.L.C., 249 F.3d 832, 838-39 (9th Cir. 2001) (undertaking analysis under Eerie doctrine, and holding that a state law imposing sanctions for an attorney's filing of a lawsuit for an improper purpose was inapplicable in federal court, given the existence of federal rules – viz., Federal Civil Rule of Procedure 11 or 28 U.S.C. § 1927 – proscribing the same misconduct). In attempting to demonstrate that our reference to the state ethical rules is wholly "beside the point," the dissent quotes Arnold Print Works, 815 F.2d at 169, where we stated that "[i]t is the nature of the proceeding – its relation to a basic function of the bankruptcy court – not the federal or state basis for the claim, that makes the difference here." (Emphasis added.) The quoted statement plainly does not support the dissent's contention that the primacy of state law can never be weighed as a factor in the core/non-core analysis; and were there to be any doubt, we further observed that "the fact that a bankruptcy matter raises issues of state, rather than federal, law does not by itself determine that it is non-core, rather than core." Id. (emphasis added).

bankrupt estate.[17]

In this type of omnibus disciplinary proceeding, which relates to multiple bankruptcy cases extending over a considerable

---

[17]The dissent further suggests that our holding will undermine the bankruptcy courts' ability to administer cases with efficiency and dispatch. Although we need not resolve the issue today, a strong argument could be made that § 157(b) contemplates that attorney discipline imposed in the midst of an ongoing case administration would be a core proceeding, even if the attorney's conduct itself occurred during a non-core proceeding, precisely because the discipline concerns the administration of the estate and the prospects that the bankruptcy court will be able to bring the case to successful conclusion. In those circumstances, immediate discipline serves the purpose of expedition, rather than thwarting it.

Throughout, the dissent inexplicably describes our non-core treatment of an omnibus disciplinary proceeding as a "penalty," which the bankruptcy courts will scurry to avoid at all costs, even if it means the tedious reopening of each constituent case, or the manipulation of the form of a disciplinary proceeding in a single bankruptcy case so as to introduce in evidence attorney misconduct arising in the other unrelated cases. In re Ludwick, 185 B.R. 238 (Bankr. S.D. Mich. 1995), however, clearly was not an attempt to manipulate the form of a disciplinary proceeding to avoid a non-core designation. The bankruptcy attorney was accused of forging one client's (i.e., Ludwick's) signature. During disciplinary hearings, a second client of the attorney in an unrelated bankruptcy case testified that the attorney had also forged his signature. The court sanctioned the attorney only to compensate Ludwick for the Ludwick forgery, not the other forgery. Id. at 244 (noting that court used evidence of second forgery only on the issue of the attorney's credibility in denying the Ludwick forgery).

We can perceive no sound basis for the curious conclusion that the bankruptcy courts would be unreasonably covetous of the power to issue a final disciplinary order, rather than a recommendatory decision subject to de novo review by the district court. The mutual goal of the bankruptcy courts and the district courts alike is the deterrence of attorney misconduct. Thus, omnibus proceedings are – and will remain – an efficient means to investigate attorney conduct spanning dozens of bankruptcy cases, as well as a viable option for the bankruptcy courts following our decision.

period of time, the alleged misconduct may have occurred either before multiple bankruptcy judges in a multi-judge district, or entirely or partially outside the presence of the bankruptcy judge who hears the disciplinary case. Here, for instance, the bankruptcy court appointed Michels to investigate Sheridan's conduct, much of which allegedly occurred outside the courtroom. In such cases, the bankruptcy judge would seem to have no greater expertise as a factfinder than the district court.

We do not question that the case law overwhelmingly suggests that the bankruptcy court possesses the requisite authority, either inherent or statutory, to regulate its bar as necessary and appropriate. See supra note 1. Nor do we hold otherwise. In the instant case, however, the bankruptcy court exercised its authority to take disciplinary action against Sheridan, and we simply hold that — in these particular circumstances — the bankruptcy court was not empowered to arrive at a final resolution of the disciplinary matter absent further district court participation and oversight.

The requirement that the district court arrive at a final, plenary disciplinary disposition further recognizes that disbarment and suspension plainly are among the more grievous sanctions which can be imposed. Thus, the imposition of a $30,377.50 fine, as a condition precedent to readmission to the bar, is onerous indeed; the more so in the present circumstances

where numerous ethical violations spanning numerous bankruptcy cases were conglomerated into a single disciplinary proceeding after the fact. Cf., e.g., Bone v. Judah (In re Josey), 195 B.R. 511, 516 (Bankr. N.D. Ga. 1996) (noting that imposition of sanction of suspension pursuant to bankruptcy court's inherent powers is "very serious," and under local district court rule is to be referred for investigation to standing district court disciplinary committee). The consolidated nature of this type of omnibus disciplinary proceeding threatens to expose attorneys to much steeper sanctions than might otherwise have been incurred as a result of piece-meal disciplinary proceedings conducted at the time the misconduct arose in each constituent bankruptcy case. Thus, the de novo review conducted by the district court accords counsel additional procedural protections when confronting potentially harsh penalties. See Cunningham v. Ayers (In re Johnson), 921 F.2d 585, 586 (5th Cir. 1991) (noting that district court undertook de novo review).[18]

Finally, these disciplinary proceedings inevitably place the bankruptcy court itself in an extremely awkward posture,

---

[18]As suspensions and disbarments are "extreme" sanctions, the courts frequently require heightened procedural protections, such as a showing of "bad faith" and "clear and convincing" evidence. See, e.g., Fellheimer, Eichen & Braverman, P.C., 57 F.3d at 1224; In re Cowboy Roofing, Inc., 193 B.R. at 446. In that vein, Sheridan argues on appeal that the bankruptcy court imposed a sanction unsupported by any evidence of bad faith on his part. We do not evaluate this argument, as it is more appropriately presented to the district court following remand.

vulnerable to the public perception (if not charge) that the bankruptcy court is inappropriately acting as accuser, investigator, prosecutor, and judge. See Peugeot v. U.S. Tr. (In re Crayton), 192 B.R. 970, 978 (B.A.P. 9th Cir. 1996). Any such perception can be further allayed through recourse to the de novo review conducted before the district court. After all, attorneys are admitted to practice before the district court, which admission accords counsel the derivative right to practice before the bankruptcy court within the district, by virtue of the fact that the bankruptcy courts function as organizational units of the district court.

We close with a final admonition: our opinion is not to be construed as holding that all attorney disciplinary proceedings before the bankruptcy court are to be presumptively considered non-core. Thus, had the Sheridan ethical violations occurred either during the course of a bankruptcy case or within the immediate presence of the bankruptcy judge, or otherwise directly affected the administration, liquidation, or reorganization efforts, a stronger demonstration might be made for characterizing the disciplinary proceeding as a core matter. See, e.g., In re Hessinger, 192 B.R. at 220 (noting that within an individual bankruptcy case a suspension or disbarment of counsel may more readily be regarded as "affecting" asset liquidation, inasmuch as disqualification of counsel normally affects entitlement to

attorney fees recoverable from the bankrupt estate, or requires reimbursement of attorney fees previously received, hence increasing the assets available for distribution). As the instant case implicates no such considerations, however, we reserve that matter for another day.

In summary, the case at bar is distinguishable due principally to the following factors: (i) the omnibus nature of the disciplinary proceeding; (ii) the case did not arise in the context of an ongoing bankruptcy case, cf. In re Desilets, 247 B.R. 660, 663 (Bankr. W.D. Mich. 2000) (holding that such an attorney suspension constitutes core proceeding), aff'd, 255 B.R. 294 (W.D. Mich. 2000), rev'd on other grounds, 291 F.3d 925 (6th Cir. 2002); (iii) these disciplinary charges were predicated upon alleged ethical-rule violations proscribed by state law, rather than by the Bankruptcy Code; and (iv) any potential effect the bankruptcy court order may have had upon a closed bankruptcy case is both remote and overly speculative, see Warren, 178 B.R. at 281.

As the BAP lacked subject matter jurisdiction in the instant case, it is unnecessary to reach the merits of the Sheridan contentions that the sanction imposed by the bankruptcy court was unwarranted in law or fact. Accordingly, the case must be remanded to the bankruptcy court for entry of its recommended findings of fact and conclusions of law, pursuant to 28 U.S.C. § 157(c)(1). The instant dismissal is not to be interpreted as reflecting our

views on the underlying merits of the Sheridan appeal or the authority of the district court, <u>vel</u> <u>non</u>, to impose monetary sanctions as a condition precedent to Sheridan's readmission to the bar following the type of omnibus disciplinary proceeding conducted here.

Accordingly, pending the entry of a final judgment by the district court, based upon the recommended findings of fact and conclusions of law entered by the bankruptcy court, Sheridan is reinstated to the bankruptcy court bar immediately. <u>See</u> <u>supra</u> note 9. Our decision shall be without prejudice to the right of a party to appeal from any district court order that finally disposes of the recommended findings of fact and conclusions of law entered by the bankruptcy court.

**The BAP decision and the bankruptcy court decision are hereby vacated for want of jurisdiction. Sheridan is hereby reinstated to the bankruptcy court bar, and the case is remanded to the bankruptcy court for further proceedings consistent with this opinion**. **The parties are to bear their own costs**. **SO ORDERED**.


**- Concurring Opinion Follows -**

**SELYA**, <u>Circuit Judge</u> **(concurring in the judgment).** I recognize that the appellant did not make his jurisdictional argument with crystalline clarity, either to the BAP or in this court. There are, however, extenuating circumstances, and in my view the <u>LaGuardia/Weinstein</u> exception is available here. I am comfortable in joining in the affirmative exercise of discretion needed to invoke that exception, and, thus, reaching the important issue of classification (core versus non-core) that permeates this proceeding. While that issue is not free from doubt, my resolution of it tracks Judge Cyr's: this omnibus disciplinary proceeding, which did not arise out of any matter(s) directly affecting the bankruptcy court's ability to administer one or more ongoing cases, is a non-core proceeding. Consequently, the bankruptcy court lacked the authority to enter a final judgment.

I therefore concur in the vacation of the improvidently entered judgment and the concomitant remand. If the appellant's conduct is deserving of discipline beyond the period of enforced suspension that he already has experienced — a matter on which I take no view — it is the district court which, in the circumstances of this proceeding, must impose it.

**- Dissenting Opinion Follows -**