**In re Linda I. SEIDEL, Debtor.**

No. 09–58731.

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

Jan. 26, 2011.

Michael W. Warren, Chillicothe, OH, for Debtor.

### ORDER DENYING IN PART MOTION OF MICHAEL W. WARREN FOR STAY PENDING APPEAL

C. KATHRYN PRESTON, Bankruptcy Judge.

This matter came on for hearing on October 19, 2010, upon the Motion for Stay

Pending Appeal and for Approval of Supersedeas Bond filed by Michael W. Warren (Doc. # 71). (The "Motion"). Present at the hearing were Rick Brunner and Charles Kettlewell, counsel for Michael W. Warren, and Pamela Arndt, counsel for the United States Trustee. Mr. Warren seeks a stay of the sanctions imposed by this Court in its Memorandum Order and Order Resolving Order Requiring Michael W. Warren to Show Cause and Directing United States Trustee to Conduct Investigation (Doc. # 66) (the "Order"), while he prosecutes an appeal of the Order. At the conclusion of the hearing, the Court granted the Motion in part, and approved the supersedeas bond. *See* Order Regarding Appellant's Motion for an Enlargement of Time and Appellant's Motion to Stay Pending Appeal, entered October 26, 2010 (Doc. # 83). This Order addresses the remaining issues presented in the Motion.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District.

## I. Background.

In the Order, this Court concluded that Mr. Warren committed violations of § 526 of the Bankruptcy Code, several of the Ohio Rules of Professional Conduct, and the Local Rules of this Court. As a result, the Court imposed sanctions upon Mr. Warren, five of which he requests be stayed. Among other things, the Order (1) required Mr. Warren to disgorge to the Debtor's credit card issuer the fees and costs which he received through credit card charge, (2) suspended the "no look fee" for Chapter 13 cases filed by Mr. Warren, (3) required Mr. Warren to complete six hours of bankruptcy ethics in-

struction satisfactory to the Court, (4) required Mr. Warren to submit to the Court a list of all bankruptcy clients from the last five years who paid attorney's fees or costs using a credit card, and (5) directed the United States Trustee to investigate Mr. Warren's practice "to determine whether, in the opinion of the United States Trustee, further action should be taken." [1]

After notice and a hearing, the Court granted Mr. Warren's Motion for a stay of the sanction requiring disgorgement of fees, provided that he post a supersedeas bond in the same amount with the Clerk of the Court. *See* Order Regarding Appellant's Motion for an Enlargement of Time and Appellant's Motion to Stay Pending Appeal. This he did, leaving for consideration the request for stay of the remaining four sanctions.

## II. Criteria for Imposition of a Stay Pending Appeal.

It is well established in this circuit that the Court must weigh the following when considering a motion for a stay pending appeal: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir.1991); *In re Smithers*, 2005 WL 4030095, *1, 2005 Bankr.LEXIS 2899, *3–4 (Bankr.S.D.Ohio 2005). The movant need not satisfy all elements, but rather the Court is to balance the factors.

---

**1.** The Court also enjoined Mr. Warren from violations of § 526 of the Bankruptcy Code and charging bankruptcy fees to credit card accounts held by clients seeking bankruptcy relief. Mr. Warren did not seek a stay of this particular sanction.

## III. Analysis.

### A. Likelihood of Success on Merits

When arguing the likelihood of success on appeal, although the movant is not required to convince the Court that its order was incorrect,

> [t]he movant is always required to demonstrate more than the mere "possibility" of success on the merits. For example, even if a movant demonstrates irreparable harm that decidedly outweighs any potential harm to the defendant if a stay is granted, he is still required to show, at a minimum, "serious questions going to the merits."

*Mich. Coalition,* 945 F.2d at 153 (internal citations omitted). Mr. Warren posits that there is a reasonable probability that he will prevail on the merits of the appeal, particularly because he views the sanctions imposed by the Court as beyond its jurisdiction. He relies heavily on *Sheridan v. Michels (In Re Sheridan),* 362 F.3d 96 (1st Cir.2004).

In *Sheridan,* a bankruptcy court had appointed special counsel to investigate ethical violations by attorney William C. Sheridan in various prior bankruptcy cases. Based on the investigation, special counsel filed a complaint in the bankruptcy court, charging the attorney with violations of the New Hampshire Rules of Professional Conduct. After a hearing, the bankruptcy court suspended the attorney from practice before that court. Sheridan appealed the decision to Bankruptcy Appellate Panel, which affirmed the decision. Appeal to the First Circuit Court of Appeals ensued. Warren states in the Motion,

> [T]he Court of Appeals found that an "omnibus disciplinary proceeding, which relates to multiple bankruptcy cases extending over a considerable period of time," constituted the sort of non-core

proceeding for which "the bankruptcy court was not empowered to arrive at a final resolution ... absent further district court participation and oversight." *Id.,* 362 F.3d at 110. The Order at issue here, directing a sweeping investigation into five years worth of cases, many of which are now closed and took place before other judges of this district, falls comfortably within the holding of *Sheridan* that such proceedings are for final resolution by Article III district courts, and not Article I bankruptcy courts.

Motion at p. 6. Warren's characterization of *Sheridan* and his reliance thereon is flawed. First, the matter in *Sheridan* involved a disciplinary action relating to multiple bankruptcy proceedings. Conversely, the disciplinary matter before this Court involved solely one case, and the Court's Order decided issues present in solely one case, that being the Chapter 13 proceeding of Linda Seidel. The disciplinary action before this Court addressed, and purported *only* to address Mr. Warren's conduct and performance in Ms. Seidel's case. Second, the First Circuit emphasized that the cases under investigation in *Sheridan* were closed and no longer pending before the bankruptcy court; thus "... the utter absence of a close nexus between the *Sheridan* disciplinary proceeding and the administration of any particular pending bankruptcy proceeding is a crucial consideration...." *Sheridan,* 362 F.3d at 104. Conversely, the Chapter 13 proceeding of Linda Seidel is currently pending before this Court. The First Circuit even acknowledged that, "... it is at least arguable that attorney disciplinary proceedings occurring *during* ... a case can be classified as core." *Id.,* at 107 (emphasis in original). Mr. Warren's counsel misinterprets the First Circuit's remarks. What the First Circuit actually stated was:

> We do not question that the case law overwhelmingly suggests that the bank-

ruptcy court possesses the requisite authority, either inherent or statutory, to regulate its bar as necessary and appropriate. Nor do we hold otherwise. In the instant case, however, the bankruptcy court exercised its authority to take disciplinary action against Sheridan, and we simply hold that—*in these particular circumstances*—the bankruptcy court was not empowered to arrive at a final resolution of the disciplinary matter absent further district court participation and oversight.

*Id.*, at 110 (emphasis added; citation omitted).

Third, the First Circuit emphasized that the case instituted by the special counsel in *Sheridan* was based solely upon violations of New Hampshire state law: the New Hampshire Rules of Professional Conduct. Conversely, the instant disciplinary proceedings are grounded in violations of the Bankruptcy Code and Local Bankruptcy Rules in addition to the Ohio Rules of Professional Conduct.

Fourth, Mr. Warren's counsel has conflated the disciplinary proceedings in this case with the sanction imposed in the Order. The disciplinary proceedings result from Mr. Warren's conduct in this case, not from his conduct in other cases. While it is true that one of the sanctions requires a report of his credit card charges in multiple cases, the fallout of that information remains to be seen. The Court is not aware of any disciplinary action that has been instituted or sanctions imposed in any other cases in which Mr. Warren has served as debtor's counsel. The United States Trustee ("UST") has been directed to conduct an investigation after Mr. Warren files the report; the investigation may or may not reveal that further action should be taken. Additionally, if the UST's report indicates further action is appropriate, then the Court must then de-

termine the scope of any further proceedings, consistent with Local Bankruptcy Rule ("L.B.R.") 2090–2.

In addition to the theory cited in the Motion, Mr. Warren's counsel offered two additional theories at the hearing on the Motion supporting his notion that this Court lacks jurisdiction: First, that the Rules of Professional Conduct can only be enforced by the Ohio Supreme Court; and second, that L.B.R.2090–2 required this court to convene a three judge panel in order to conduct the hearing on the order to show case which resulted in the Order. However, counsel did nothing more than articulate the theories; he did not elaborate on how the theories applied or otherwise illustrate a reasonable likelihood of prevailing on the merits based on these theories.

 Notwithstanding, this Court makes the following observations: the Ohio Constitution places in the Ohio Supreme Court original (but not exclusive) jurisdiction over matters relating to discipline of persons admitted to practice law in the State of Ohio. Ohio Const. art. IV, § 2(B)(1)(g). Notably, this Court did not impose a sanction purporting to compromise Mr. Warren's admission to practice law either before the state courts of Ohio or before the federal courts of the Southern District of Ohio. In any case, every court has inherent power to regulate the practice of law before it. *Price v. Lehtinen (In re Lehtinen)*, 564 F.3d 1052 (9th Cir.2009). *See also In the Matter of Volpert*, 110 F.3d 494, 500–501 (7th Cir.1997); L.B.R.2090–2(b).

Additionally, this Court, in collaboration with the United States District Court for the Southern District of Ohio, has enacted local rules of practice and procedure before this Court. *See* Local Bankruptcy Rules, Forms and Procedures, United

States Bankruptcy Court for the Southern District of Ohio (December 1, 2009). These rules incorporate the Ohio Rules of Professional Conduct ("RPC"), thus, subjecting those who violate the Ohio RPC to sanction by this Court. *See* L.B.R.2090–2(a) and (b).[2]

Finally, L.B.R.2090–2, on which Mr. Warren partially relies, requires a three judge panel only in instances in which an allegation of misconduct would warrant suspension or disbarment AND the disciplinary proceeding is predication upon the complaint of a judge of this Court.[3] In the instant case, the disciplinary proceedings were predicated upon the complaint of Ms. Seidel, and the Court did not contemplate

that the sanction of suspension would be warranted at this stage.

Thus, Mr. Warren has failed to illustrate the existence of serious questions going to the merits of his appeal.

## B. The Likelihood of Harm to the Moving Party

Without specific discussion of how the criteria for a stay apply to each sanction imposed in the Order, Mr. Warren posits generally that he would be harmed in the absence of a stay of the remaining sanctions. According to Mr. Warren, this harm would occur in the form of "outlays of time, energy and inconvenience," [4] for which there is no compensatory or other corrective relief available.

---

**2.** L.B.R.2090–2 provides in pertinent part:

(a) Relevant Codes and Rules. The Rules of Professional Conduct adopted by the Ohio Supreme Court, as amended from time to time, apply in this court, except that service on a debtor as required by these Local Rules and the Federal Rules of Bankruptcy Procedure shall not be a violation of the Ohio Rules of Professional Conduct as an unauthorized contact with a represented person. Disciplinary standards governing the conduct of attorneys, as provided in the Model Federal Rules of Disciplinary Enforcement as adopted by the United States District Court for the Southern District of Ohio, and modified by this Local Rule, will be enforced by the bankruptcy judges, and all proceedings thereon shall be conducted in this court.

(b) Court's Inherent Power. Whenever appropriate, this court, through its inherent powers, may discipline attorneys who practice before it, including for violations of the Federal Rules of Bankruptcy Procedure, these Local Rules, orders of this court, and the Rules of Professional Conduct relating to representation of one or more parties before the court. Such disciplinary actions, for substantial cause or repetitive actions shown, will be taken only after proper notice and due process, and may include the imposition of monetary sanctions and suspension from the practice of law before this court.

This rule was also in effect in the previous version of the local rules. *See* L.B.R.2090–2 (Jan. 1, 2006).

**3.** L.B.R.2090–2(c) provides in pertinent part:

(c) Special Procedure for Suspension from the United States Bankruptcy Court.

(1) Order to Show Cause. When misconduct or allegations of misconduct which, if substantiated, would warrant suspension or disbarment of an attorney admitted to practice before this court shall come to the attention of a judge of this court, whether by complaint or otherwise, and the applicable procedure is not otherwise mandated by these Local Rules, the judge shall issue an order requiring the respondent-attorney to show cause within thirty (30) days after service of that order upon the attorney why the attorney should not be disciplined.

(2) Hearing. Upon the respondent-attorney's answer to the order to show cause, if any issue of fact is raised or the respondent-attorney wishes to be heard in mitigation, the court shall set the matter for prompt hearing. If the disciplinary proceeding is predicated upon the complaint of a judge of this court, the hearing shall be conducted before a panel of three other judges of this court appointed by the chief judge of this court. . . .

**4.** Motion at p. 6.

The Sixth Circuit Court of Appeals has offered instruction regarding the potential for harm:

> In evaluating the harm that will occur depending upon whether or not the stay is granted, we generally look to three factors: (1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided. *Ohio ex rel. Celebrezze,* 812 F.2d at 290 (citing *Cuomo,* 772 F.2d at 977). In evaluating the degree of injury, it is important to remember that "the key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974) (quoting *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm'n,* 104 U.S.App. D.C. 106, 259 F.2d 921, 925 (D.C.Cir. 1958)). In addition, the harm alleged must be both certain and immediate, rather than speculative or theoretical. *See Wisconsin Gas Co. v. Federal Energy Regul. Comm'n,* 244 U.S.App. D.C. 349, 758 F.2d 669, 674 (D.C.Cir.1985). In order to substantiate a claim that irreparable injury is likely to occur, a movant must provide some evidence that the harm has occurred in the past and is likely to occur again.

*Mich. Coalition,* 945 F.2d at 154.

Neither in his papers, nor at the hearing did Mr. Warren offer any substantiation of the injury alleged. While there is no doubt that compliance with the sanctions will demand some time, the Court has been given no sense of the financial or time costs which would ensue, if any. No effort was made to quantify these injuries, and thus, the Court has no proof of whether the alleged harm would be substantial or irreparable, certain or immediate. As stated by the Sixth Circuit, mere injuries are not enough to satisfy the criteria for a stay.

Furthermore, as to the sanction requiring Mr. Warren to attend instruction in bankruptcy ethics, the Court notes that continuing education and ethics instruction are required by the Ohio Supreme Court in order to maintain one's admission to practice law. Although the Ohio RPC requires only two hours of instruction in each two year reporting period, hours of instruction taken in excess of the Supreme Court requirement can be allocated to general education requirements. Thus there is no injury to Mr. Warren resulting from compliance with this particular sanction.

*C. The Likelihood of Harm to Others*

The third criteria to be considered in connection with a request for a stay pending appeal is the prospect that others will be harmed if the Court grants the stay. The Court sees no harm that could befall others in the absence of a stay of the sanctions suspending the no-look fee for Mr. Warren's Chapter 13 cases, or requiring ethics instruction. However, a stay may result in harm in that the passage of time may jeopardize the quality or availability of records and other information necessary for Mr. Warren to comply with the sanction requiring a report of sources of his compensation in previous cases, and necessary for the UST to conduct his investigation. Passage of time often results in deterioration of records and loss of potential witnesses. Ordinary record retention requirements may not mandate conservation of the necessary records, and during a stay of the reporting requirement

and the UST's investigation, Mr. Warren (as well as others in possession of information) would be permitted to dispose of records which may be required in the event that Mr. Warren is unsuccessful in his appeal.[5]

### D. The Public Interest

In evaluating a motion for a stay pending appeal, the Court must last consider the public interest in granting the stay. Mr. Warren argues that failure to issue a stay will harm the public interest because (1) this Court exceeded its authority and therefore the sanctions should not be enforced at this time, (2) suspension of the no-look fee serves to treat him differently from other bankruptcy practitioners, and (3) the UST's resources could be unnecessarily expended by its compliance with the Order in the event that the Order is reversed by the appellate court. The first of these reasons is a reprise of Mr. Warren's argument on his likelihood of success on the merits of his appeal. Mr. Warren offered no additional support on this point and the Court has already addressed this above.

■ Mr. Warren then suggests that the sanction of suspension of the no-look fee in Chapter 13 cases results in treatment of Mr. Warren that differs from treatment of other bankruptcy practitioners, in violation of the premise that rules and procedures should be uniformly applied. This is certainly true. However, the authorization of fees in chapter 13 cases, without the prerequisite of a fee application, is a privilege offered to the bankruptcy bar by the Court, not a right. *See* L.B.R.2016–1(b)(2) ("Fee applications or disclosures *may* be allowed up to

$3,500.00 ('unitemized fee') without actual hearing or specific itemization for services rendered from initial interview through confirmation of the plan." (Emphasis added.)) The rule serves to promote judicial efficiency in administration of chapter 13 cases. However, it is available at the discretion of the bankruptcy judge. In the Order, the Court specifically found that Mr. Warren had failed to properly represent Ms. Seidel and that he had violated various provisions of the Bankruptcy Code and Rules. The Court remembers well the testimony of Ms. Seidel at the hearing on the Order to Show Cause, when she lamented that Mr. Warren had no interest in helping her or prosecuting her case once he obtained payment for representing her in her Chapter 13 case. It is incumbent on this Court to address abuse of the bankruptcy system, in whatever form that abuse takes. Mr. Warren's conduct in this case is certainly grounds for suspension of the no-look fee, so that the Court can assure his clients are properly and adequately represented, and that the fee is not exorbitant for the service rendered. Mr. Warren has failed to show why the public interest is furthered by suspension of this sanction.

Finally, it is without question that an investigation by the UST will require expenditure of governmental resources. But interestingly, if the UST has any concern over the scarcity of his resources or the wisdom of utilizing those resources on this matter, he did not voice them at the hearing. To the contrary, counsel for the UST enthusiastically advised the Court that the UST is ready, willing and able to pursue the investigation ordered by the Court, and has the personnel and procedures in

---

**5.** Resolution of an appeal to the District Court usually requires approximately twelve months. Should Mr. Warren or another party in interest appeal the District Court ruling, resolution in the Sixth Circuit Court of Appeals generally requires an additional twelve months.

place to do so. The Court also notes, and at the hearing Mr. Warren did not dispute, that the UST does not need an order of this Court to undertake an investigation of an attorney's representation of his bankruptcy clients. Certainly, discharge of its duties by a governmental agency is consistent with the public interest. Thus, the public interest is not harmed by failure to grant a stay.

## IV. Conclusion.

Mr. Warren has failed to show that there are serious questions bearing on the likelihood of the success of his appeal. Furthermore, he has failed to illustrate that he will be irreparably harmed absent a stay, whereas there is some prospect that harmed may occur if the Court grants the stay. Finally, the public interest is not significantly furthered by a stay, and in fact, may be promoted by compliance with the sanctions imposed. Engaging in the balancing test mandated by the Sixth Circuit Court of Appeals, a stay of the sanctions pending appeal by Mr. Warren is not warranted. Accordingly, except as partially granted by the Order Regarding Appellant's Motion for an Enlargement of Time and Appellant's Motion to Stay Pending Appeal, entered October 26, 2010 (Doc. # 83), the Motion for Stay Pending Appeal is denied. Mr. Warren and the UST shall comply with the Order (as amended by the Order Regarding Appellant's Motion for an Enlargement of Time and Appellant's Motion to Stay Pending Appeal) as to the sanctions set forth in paragraphs 3, 4, 5 and 6 of the Order.

**IT IS SO ORDERED.**